401 So.2d 1090 (1981)
CAMERON STATE BANK, Plaintiff-Appellee,
v.
AMERICAN EMPLOYERS' INSURANCE COMPANY, Defendant-Appellant.
No. 8283.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1981.
Rehearing Denied August 13, 1981.
*1091 Brame, Bergstedt & Brame, David A. Fraser, Lake Charles, for defendant-appellant.
Jones, Jones & Alexander, Glenn W. Alexander, Cameron, for plaintiff-appellee.
Before CUTRER, STOKER, and BIENVENU,[*] JJ.
STOKER, Judge.
Cameron State Bank sued American Employers' Insurance Company under a "Monies and Securities Broad Form" insurance policy, seeking recovery of $10,000 to cover items lost through theft. From a judgment in favor of the plaintiff for $10,000 and penalties and attorney's fees the defendant appeals. The plaintiff answers the appeal seeking an increase in attorney's fees.
The issues in this case are:
1. Whether plaintiff's loss is covered under the policy issued by defendant, and
2. Whether the defendant's failure to pay was arbitrary, capricious or unreasonable so as to subject defendant to payment of penalties and attorney's fees.

FACTS
The main bank of Cameron State Bank is in the town of Cameron in Cameron Parish. There is a branch bank in Grand Lake, a community approximately thirty-five miles distant from Cameron. Murray Hebert is employed by Cameron State Bank as a bank messenger to deliver the bank's daily works and transactions from the Grand Lake branch to the main bank. On August 6, 1979, Murray Hebert picked up the bank pouch containing these transactions at approximately 5:30 P.M. and continued on to his home in Lake Charles. Once there he left the bank pouch on the floor of his unlocked van which he parked in the garage adjacent to his home.[1] The next morning on the way to the main bank in Cameron Murray Hebert discovered that the bank pouch was missing. Upon reaching the bank he reported the theft to the bank officials who notified the authorities. The bank pouch was never recovered. The bank incurred a loss of $10,903.24.
Defendant issued to plaintiff a money and securities broad form policy with $10,000 limits. In its policy under Coverage B, entitled "Loss Outside the Premises," defendant agreed:
"... To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises, while being conveyed by a messenger or any armored motor vehicle company, or while within the living quarters in the home of any messenger.
"To pay for loss of other property by robbery or attempt thereat outside the premises while being conveyed by a messenger or any armored motor vehicle company, or by theft while within the living quarters in the home of any messenger."

COVERAGE UNDER THE POLICY
The defendant-appellant asserts that the policy provides coverage for losses occurring outside the premises in three circumstances:
*1092 1. While the money and securities are being conveyed by a messenger,
2. While the money and securities are being conveyed by any armored vehicle company, and
3. While the money and securities are within the living quarters in the home of any messenger.
Appellant argues that the bank's loss is not covered under the policy because it does not fall into one of the three above categories. Appellant relies on Monteleone v. American Employers' Insurance Company, 239 La. 773, 120 So.2d 70 (1960) and Sansone v. American Insurance Company, 245 La. 674, 160 So.2d 575 (1964) as support for its position.
The plaintiff-appellee argues that the loss occurred while the insured items were being conveyed by a messenger and distinguishes Monteleone, supra, and Sansone, supra. In addition, plaintiff relies on Allen & Allen, Inc. v. State Farm Fire and Casualty Company, 295 So.2d 894 (La.App. 2nd Cir. 1974), writ denied, 299 So.2d 794 (La.1974).
The specific language of the first paragraph of Coverage B with which we are concerned is "... while being conveyed by a messenger ...".
This language was first interpreted by the Supreme Court in Monteleone, supra. In Monteleone plaintiff, a grocery store owner, stored two bags of money in a cedar chest in his home overnight. The next morning plaintiff took one bag to the bank and left the other one in the cedar chest. Later that day plaintiff's home was burglarized and the bag of money stolen. The question presented to the court was whether the loss fell within the policy provision which provided coverage for loss of money and securities by the actual destruction, disappearance or wrongful abstraction outside the premises while being conveyed by a messenger.[2]
The Supreme Court in its interpretation of the phrase "while being conveyed by a messenger" resorted to dictionary definitions of "messenger" and "convey". The court also relied on a provision of the policy which provided that not more than one messenger was to have custody of the insured property outside the premises.[3] In denying recovery the court said:
"... the clause in question, when viewed in the light of other provisions of the policy, clearly indicates that the conveying messenger must have the money in his personal custody at the time of the loss which was obviously not the case here."
Had the policy involved in Monteleone contained a provision covering loss while within the living quarters in the home of the messenger (which it did not), perhaps coverage could have been found under such a provision.
In Sansone, supra, plaintiff, owner of a restaurant, gave $2,500 to the restaurant manager with instructions to deposit it in the bank the next morning. After leaving work, the manager went to a social club and once there transferred the money from his pants' pocket to his coat pocket and instructed the porter to hang up his coat. After a period of time he became concerned about the money, located his coat on a coat rack in an adjoining room and discovered that the money was missing. The court said the sole issue presented was whether the money disappeared "while being conveyed by a messenger" within the terms of the policy.[4] The court quoted the passages of the Monteleone opinion defining messenger and convey and found it significant that "the restaurant manager had turned aside from his function as a messenger to engage in an evening of social activities." The court denied recovery concluding that the money was not being conveyed by a messenger at the time it disappeared.
*1093 In Allen the plaintiff operated a vending machine business. Plaintiff furnished an employee with a van equipped with a safe in which to store money collected by the employee from the vending machines. The employee returned to his home at the end of the day and parked the van allowing the coins to remain in the safe overnight. The next morning the employee discovered that the coins had been removed from the safe. The issue presented to the court was whether the money disappeared "while being conveyed by a messenger." In interpreting this policy provision the court relied on two requirements under a heading designated as "Additional Declarations." Item A3 of these additional declarations provided that the custody of the insured property be with only one messenger.[5] Item A5 provided:
"The insured property while outside the premises in the custody of a messenger shall be conveyed in VARIOUS [vehicles] employed for the exclusive use of the messenger and his guard, if any, throughout the entire trip."[6]
The Court of Appeal in Allen affirmed the decision of the trial court which relied heavily on item A5 in interpreting the policy. The trial judge found that travel from the point of collection to the point of delivery of the coins at plaintiff's place of business comprised one trip and that the policy required the coins to be conveyed in the van throughout the entire trip. The trial judge concluded the coins were being conveyed as contemplated by the terms of the policy.
We find that the loss in the present case occurred while the insured items were being conveyed by a messenger. Monteleone and Sansone are distinguishable from the case before us. The policy which we are called upon to interpret is different from the policy in Monteleone. The terms of the policy in the instant case indicate to us that physical or personal custody of the insured item with the conveying messenger is not a prerequisite of coverage under this broad form policy. We think it is an unnecessarily narrow construction of the policy to require that the insured item must be within the immediate physical custody of the conveying messenger in order for there to be coverage under the policy. We are not concerned with the language of the policy which provides coverage for losses which occur while the insured property is located within the living quarters of the home of any messenger. The three circumstances under which coverage is provided are stated in the disjunctive. Facts fitting any one of the three circumstances bring coverage into play. Continuous personal or physical custody is not a prerequisite to coverage.
Sansone is distinguishable from the case before us on the facts. Within the meaning of the policy (as construed in Allen) we do not find that Murray Hebert had turned aside from his function as a messenger at the time the loss occurred.
We affirm that part of the trial court judgment which granted plaintiff a recovery of $10,000.

PENALTIES AND ATTORNEY'S FEES
The trial court found that the denial of coverage by the appellant-insurer entitled the appellee-insured to penalties and attorney's fees under the provisions of LSA-R.S. 22:658. This statute provides that, if an insurer fails to pay a loss within sixty days after being furnished satisfactory proof of loss, and the failure to pay is found to be arbitrary, capricious or without probable cause, such failure shall subject the insurer to payment of a penalty (in addition to the amount of loss) of 25% of the loss and reasonable attorney's fees for prosecution and collection of the loss. The trial court awarded penalties of $2,500 and attorney's fees in the amount of $1,470.
*1094 A trial court's conclusion with regard to assessment of penalties and attorney's fees under LSA-R.S. 22:658 is in part a factual determination. It should not be disturbed in the absence of a finding that it is manifestly in error. Carter v. American Mutual Liability Insurance Company, 386 So.2d 1072 (La.App. 3rd Cir. 1980) and Cullivan v. Fish Engineering and Construction Company, Inc., 354 So.2d 597 (La.App. 3rd Cir. 1977).
We find no manifest error in the trial court's decision to assess penalties and attorney's fees. The appellee answered the appeal in this case. The sole prayer of appellee in its answer to the appeal is to request an increase in the attorney's fees in the amount of $1,000 to cover the additional attorney's fees incurred in defending this appeal. We think an additional award for services rendered on appeal is in order and we will modify the judgment to award an additional $500 for a total award of attorney's fees of $1,970.
For the above and foregoing reasons the judgment appealed from is affirmed insofar as it awards plaintiff $10,000 to cover its loss under the policy and $2,500 in statutory penalties. The judgment is modified to increase the award of attorney's fees to $1,970. We affirm the award of legal interest on the principal amount, statutory penalties and attorney's fees from date of judicial demand until paid. Costs of this appeal are to be borne by appellant.
MODIFIED AND AFFIRMED AS MODIFIED.
BIENVENU, J. Ad Hoc, dissents and assigns written reasons.
BIENVENU, Judge ad hoc, dissenting.
The question of coverage turns on two circumstances in which losses of this kind occurring outside the bank premises are covered according to the policy language. One is in situations where money and securities are "being conveyed by a messenger", and the other is where the loss occurs while the money and securities are "within the living quarters in the home" of the messenger. Clearly there is no coverage herein under the second circumstance. The majority concludes that the loss herein occurred while the pouch was "being conveyed by a messenger." In so concluding, they distinguish two of the apparently only three similar cases in the Louisiana jurisprudence, Monteleone and Sansone, supra (which are both Supreme Court cases and hold that coverage did not exist) and place reliance on the third, Allen, supra, which held coverage to exist. I distinguish Allen and would reverse the decision of the trial court in its entirety.
I suggest that had the Monteleone policy provided for coverage "while within the living quarters in the home" of the messenger, the result would have been different, for there is no requirement that the messenger be in the home at the time of the loss.
The policy in Allen contained the identical language as in the instant case, but with the following additional language:
"The insured property while outside the premises in the custody of a messenger shall be conveyed in various vehicles employed for the exclusive use of the messenger... throughout the entire trip." (Emphasis mine)
Coverage was held to exist in Allen and the Court relied on the above language in so holding. That holding is correct, because the additional language plainly requires that the money shall be conveyed in a vehicle furnished by the employer throughout the entire trip and during the time when it is outside the premises. But I distinguish Allen from the instant case because that additional language is not included in the instant policy. The messenger in Allen was supposed to keep the money in the vehicle safe; the messenger in the instant case was supposed to take the pouch overnight into the living quarters in his home. I think that is what the policy contemplates; why else have the language about the living quarters? And note that the requirement is not only to have the insured property in the home, but "within the living quarters in the home." *1095 To me, the intent was to provide coverage in the two situations in which Mr. Hebert would find himself: while the pouch was in transit in his personal custody ("being conveyed by a messenger"), and while he was responsible for it overnight; and to direct the proper manner for its overnight care. It seems that the bank would have instructed Mr. Hebert about the policy language, if from none other than a common sense standpoint. It would have been no trouble to carry the pouch into the much safer confines of his living quarters, than leave it on the floor of his unlocked van. Justifying coverage herein under the "being conveyed by a messenger" theory will compel too liberal a precedent for the future, because we are holding that that theory does not require responsible safekeeping. The policy obviously contemplates that the conveyance is to be made in the personal custody of the messenger. Under a construction which does not require physical or personal custody and will afford coverage when the messenger does not even bother to remove the insured property from the floor of his unlocked van and take it into his home overnight, we will likewise have to hold coverage to exist in instances (analogizing to the facts of this case) where Mr. Hebert leaves the pouch in his mailbox at the street, or on his front steps, or anywhere else he pleases. I know of no formula that could be used to keep the theory within boundaries. Such a construction indeed encourages irresponsibility. I think the better view is that the conveyance by the messenger is interrupted when he stops conveying: when he parks the van for the night. At that point, the other theory comes into effect. It would seem that prudence would dictate that Mr. Hebert not leave the pouch in the van, and had he been prudent there would be no question about coverage.
Allen discusses two Georgia cases involving the same policy language. The earlier case gave recovery where the valuables were stolen from the locked glove compartment of the messenger's locked car while it was parked for ten minutes during which he was purchasing a sandwich to be eaten later. While I have not been able to review the decision, it seems apparent that recovery was based on the "being conveyed by the messenger" theory. I find no fault with that; the loss occurred in transit while the messenger exercised reasonable personal physical custody over the insured property. The other case is the closest of all to the instant one, but with stronger facts: The money was stolen while stored overnight in the locked glove compartment of the locked truck of the insured's president, parked on the driveway of his residence. The court denied recovery, finding that the money was not in the relative safety of the president's living quarters, nor was it "being conveyed by a messenger." While we are not bound by the Georgia decisions, they are to me well reasoned and offer guidance. Actually, I feel that all five of the decisions mentioned above make good law on their facts; but I do not believe that the majority view herein will have that same effect.
I respectfully dissent.
NOTES
[*] Judge C. Thomas Bienvenu, Jr., Sixteenth Judicial District Court, Parish of St. Martin, participated as Judge Ad Hoc in this decision.
[1] Murray Hebert testified that this was his usual routineto pick up the pouch, continue on to his home in Lake Charles and leave the pouch in his van overnight. Apparently the only time Mr. Hebert took the pouch into his home was when he knew it contained cash or valuables. The bank officials knew of Murray Hebert's procedures.
[2] The policy in Monteleone differs from that in the instant case in that the policy made no provision for a loss while being conveyed by an armored motor vehicle company or for a loss while within the living quarters in the home of any messenger.
[3] This provision is found in the instant policy.
[4] The policy in the instant case contains the exact language as the policy interpreted in Sansone.
[5] This provision is found in the instant policy and is the same provision relied upon by the Supreme Court in Monteleone in finding that personal custody is essential to coverage under the phrase "while being conveyed by a messenger." See footnote 3 and text at that note.
[6] This provision is present in the instant policy but the blank specifying the vehicle is not completed.