442 So.2d 627 (1983)
Kelly SIBLEY
v.
INSURED LLOYDS.
No. 83 CA 0162.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*628 W. Hugh Sibley, Greensburg, for plaintiff.
*629 Robert L. Kleinpeter, Baton Rouge, for defendant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit in contract concerning insurance claims submitted after a dump truck trailer collapsed and was damaged. The insured sought collision damages of $28,550.07 (the policy provided coverage of $20,000 with a $500 deductible) and unspecified damages for loss of income, loss of business and consequential expenses. The insured also alleged that the insurer was arbitrary, capricious and without probable cause in failing to pay these claims and requested statutory penalties including an attorney fee of $7,250. The insurer admitted the occurrence of the accident and coverage but asserted that the trailer could be repaired for $5,056.20 less any unforeseen or hidden damage which would also be covered by the policy. The trial court rendered judgment in favor of the insured for $19,500 for collision damage, $150 for a wrecker fee, $633.20 for rental of a substitute trailer and $2,205 for storage fees from June 6, 1981, until August 11, 1982, and $5.00 per day thereafter until paid in full. The trial court also granted statutory penalties of $2,340 (12% of $19,500) and an attorney fee of $1,160. The insurer took this suspensive appeal. The insured answered the appeal asserting that the attorney fee award in the trial court was inadequate and requested an additional attorney fee for this appeal.

FACTS
On August 24, 1979, Kelly A. Sibley purchased a new 1979 Hobbs aluminum dump truck trailer from Leon Pickard Chevrolet, Inc. for $21,000. Sibley made a down payment of $5,000 and financed the balance through the General Motors Acceptance Corporation (GMAC).
On August 18, 1980, Sibley purchased a policy of insurance from Insured Lloyds (Lloyds) for a period of one year on the trailer (and also on the truck that apparently pulled it). This policy provided various coverages including collision coverage on the trailer of $20,000 less a $500 deductible.
On February 27, 1981, the hydraulic cylinder on the trailer gave way causing it to turn over on its side and sustain damages. Sibley notified his insurance agent of this accident that same day. Sibley was advised that someone would be out to survey the damages to the trailer. After a period of apparent inactivity, Sibley decided to obtain his own estimate of damages. He went to three places but was only successful in getting an estimate from Slade's Welding Service, Inc. of $28,550.07 on March 24, 1981. This estimate provided for the disassembly of the trailer and reassembly using new parts. Sibley also retained the services of an attorney.
On April 17, 1981, Tommy Cook, the manager of Cook and Cook, Inc., the adjuster for Lloyds, sent Sibley's attorney an estimate of repairs for the trailer for $5,056.20 which was prepared by Cook and Cook, Inc. on March 6, 1981. Cook further advised that All Truck Parts & Equipment Co. Inc. (All Truck) of Baton Rouge would repair the trailer for that amount. On April 24, 1981, Sibley's attorney sent to Tommy Cook a copy of the estimate of repairs secured by Sibley from Slade's.
On May 7, 1981, GMAC filed suit under executory process against Sibley for the seizure and sale of the trailer because Sibley failed to pay the March and April 1981 installment payments due on the financed balance of the purchase price of the trailer. This suit was dismissed by GMAC on May 15, 1981.
On May 26, 1981, Tommy Cook again wrote to Sibley's attorney and forwarded to him for execution by Sibley a proof of loss in the amount of $5,056.20 less the $500 deductible. Cook stated that if any additional damage over this estimate was found in the course of repair which was a result of the accident that Lloyds would honor that amount. On June 10, 1981, Sibley's attorney wrote back to Cook and advised that Sibley had executed the proof *630 of loss statement but that it would not be released until all repairs necessary to return the trailer to its original pre-accident condition were guaranteed for a period of one year from the date of delivery to Sibley. By reply letter of June 12, 1981, Cook furnished Sibley's attorney with a copy of a letter dated June 3, 1981, signed by Mike Culotta, president of All Truck, wherein Culotta agreed to repair the trailer for $5,056.20 but provided that any unforeseen or hidden damage would be in addition to that amount. Cook further advised that Culotta would guarantee his repairs and requested that the proof of loss be forwarded so that it could be placed in line for payment.
On June 29, 1981, Sibley's attorney advised Cook that he needed a written guarantee from Culotta and All Truck warranting all work for one year from date of delivery. On July 17, 1981, Sibley's attorney again notified Cook of the necessity for a written guarantee, advised that without this guarantee settlement was out of the question and requested a reply within five days. This identical letter was sent again by Sibley's attorney to Cook on August 5, 1981. On or about August 20, 1981, Sibley submitted a proof of loss in the sum of $28,050.07. This suit was filed on August 27, 1981. After suit was filed, Culotta on behalf of All Truck signed a written guarantee. This agreement did not provide a one year guarantee period but contained the following language:
This guarantee does not cover any hidden damage not detected 30 days after repairs or damage that is not related to the above accident, nor damage sustained to this same area of repair by normal wear and tear and/or abusive treatment on this trailer.

DAMAGE TO TRAILER
Lloyds contends that the trial court committed error by concluding that the trailer could not be repaired for $5,056.20 and was a total loss.
Sibley testified that he had worked with gravel trucks for 20 years and did some of his own repairs. He inspected the trailer and observed that the braces under it were all broken, the steel frame was twisted, the main braces on the hydraulic lift cylinder were broken and the tailgate was twisted. He did not think that the trailer could be properly repaired for the amount offered by Lloyds. For this reason, he wanted a guarantee from the repairer that the trailer would be fixed correctly and operate safety.
Robert L. Jackson testified that he was the owner of Slade's Welding Service, Inc. and had been repairing trucks and trailers since 1964. He worked primarily on tank trailers (250-300 per year) but had worked on three dump trucks. He was qualified as an expert in the field of trailer repairs and estimating costs of such repairs. Jackson only had the capability of repairing the tailgate and would have to replace the steel frame and the hydraulic lift cylinder. The estimate of repairs that he gave to Sibley involved disassembly and reassembly of the trailer with new parts. He was not aware of anyone in his area who could repair the frame. Repair is generally less costly than replacement if substantial freight charges are not involved.
Andrew J. McPhate, a Professor of Mechanical Engineering from Louisiana State University in Baton Rouge, was accepted as an expert in mechanical engineering with a specialty in design. He inspected the trailer and found a large permanent torsional deformation (twisting) in the underframe of the trailer. He indicated that there were two methods by which the frame could be repaired. One involved placing the frame in a large heat treating oven, bringing the oven to a high temperature, soaking the frame, clamping the frame in position and pulling it back into shape. McPhate was not aware of such an oven in this area. This method would relieve the tension from the frame. The second method involved tieing the frame to a heavy table and using jacks to twist it back in shape. After the frame was in the correct shape, shear plates would be welded to it to keep it from twisting. This *631 method would not relieve the tension from the frame and, if the welds broke, the frame would return to its prior twisted condition. As to whether or not it was economically feasible to repair the frame, McPhate testified as follows:
A. It is not repairable. The underframe is not repairable. You would be really better off building a new underframe. It is as simple as that. It is so deformed that the amount of man power, the amount of time, the amount of effort to insure that what you're doing in results in a good product would be more expensive than it would be to start from fresh materials and build a new one, especially if you had a factory set up and you were already building these things. For example, I'm talking about the manufacturer would already be set up and would be producing these things. That the amount of money involved and the amount of time and effort it would be cheaper to actually build a new underframe.
Q. So it is then your opinion that this trailer was unrepairable using standard procedures for this area?
A. Right. It is just simply deformed too far.
Charles A. Rochester, an appraiser with ten years experience employed by Cook and Cook, Inc., was directed to inspect the Sibley trailer and prepare an estimate of repairs. Most of Rochester's prior experience was with appraisals on automobiles, but he had done some trucks. He was accepted as an expert in the field of vehicle appraisals. Rochester was of the opinion that the frame could be repaired. This work would be subcontracted to a firm in Lafayette, Louisiana. Rochester went to a General Motors body shop school in New Orleans but had no other schooling in making appraisals. This was the most extensive damage to a trailer that he had seen. He asked Mike Culotta to assist him in the appraisal.
Mike Culotta, the owner of All Truck, had been repairing trucks since 1969. All of his experience in this field was acquired on the job, and he had no formal schooling for this work. Culotta indicated his business was not equipped to repair the twisted frame but that this work could be properly done by R.J. Arceneaux Auto and Truck Repair of Lafayette, Louisiana. Culotta had contacted that firm about doing the work.
The trial court apparently accepted the testimony of Professor McPhate, determined that it was not economically feasible to properly repair the trailer and concluded that the trailer was a total loss. There are facts in the record to support these rulings and these factual determinations are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
When a vehicle is a total loss, the owner is entitled to recover the market value of the vehicle before the accident less its salvage value, if any. Bernard v. Fidelity & Casualty Company of New York, 186 So.2d 904 (La.App. 1st Cir.1966). Cf. Coleman v. Victor, 326 So.2d 344 (La. 1976); Cenac v. Duplantis Moving & Storage Company, Inc., 407 So.2d 424 (La.App. 1st Cir.1981). In the Lloyds policy, the parties contractually agreed that the value of the trailer was $20,000. Counsel for Lloyds admitted this during the course of the trial. Sibley testified that the dump box on the trailer was salvageable but that he did not think the trailer had any salvage value because it could not be used by him. Professor McPhate testified that the dump box and the suspension components on the trailer were salvageable. He estimated that 20-25% of the trailer was salvageable but acknowledged that he did not "... make a component by component evaluation of the salvage value of that trailer." The trial judge awarded Sibley $19,500, the total value of $20,000 less the $500 deductible. In view of the testimony of Professor McPhate, this conclusion was in error. We accept the 20% ($4,000) salvage figure given by Professor McPhate and reduce the *632 award for damages to the trailer to the sum of $15,500.

STATUTORY PENALTIES
La.R.S. 22:658 provides that all insurers issuing policies like that of Lloyds shall pay the amount of any claim due an insured within sixty days after receipt of satisfactory proofs of loss from the insured. If the insurer fails to make such payment and such failure is arbitrary, capricious or without probable cause, the insurer shall be subject to penalties of 12% of the total amount of the loss and a reasonable attorney fee for the prosecution and collection of the loss. This statute is penal in nature and must be strictly construed. The burden is on the claimant to prove lack of probable cause, arbitrariness or capriciousness. Batiste v. Pointe Coupee Constructors, Inc., 401 So.2d 1263 (La.App. 1st Cir.1981), writ denied 409 So.2d 615 (La. 1981).
Lloyds contends that the trial court committed error by assessing it with statutory penalties. A trial court's conclusion concerning the assessment of statutory penalties is in part a factual determination which should not be disturbed in the absence of a finding that it is manifestly in error. Meshell v. Insurance Company of North America, 416 So.2d 1383 (La.App. 3rd Cir.1982); Cameron State Bank v. American Employers' Insurance Company, 401 So.2d 1090 (La.App. 3rd Cir.1981), writ denied 409 So.2d 674 (La.1981).
Where there is a reasonable disagreement between the insured and the insurer as to the amount of a loss, the insurer's refusal to pay is not arbitrary, capricious or without probable cause and failure to pay within the statutory delay does not subject the insurer to penalties. However, if part of a claim for property damage is not disputed, failure of the insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to liability for penalties on the entire claim. To avoid imposition of penalties in such a situation, the insurer must unconditionally tender to the insured that part of the claim for which there is no dispute. O'Brian v. Allstate Insurance Company, 420 So.2d 1222 (La.App. 3rd Cir.1982); Sigue Trucking, Inc. v. Insured Lloyds, All 417 So.2d 97 (La.App. 3rd Cir.1982); LeBlanc v. Underwriters at Lloyd's, London, 402 So.2d 292 (La.App. 3rd Cir.1981); Foster v. Western World Insurance Co., 339 So.2d 395 (La. App. 1st Cir.1976).
Lloyds does not contest the occurrence of the accident or that it provided collision coverage on Sibley's trailer. A dispute arose between the parties as to the extent of the damages to the trailer. Although Lloyds could reasonably dispute and litigate the issue of whether or not the trailer was a total loss, its own appraisal acknowledged that the damages were at least $5,056.20. Lloyds did not make an unconditional tender of this amount (less the $500 deductible) to Sibley. Instead, as a condition precedent to payment, Lloyds required Sibley to execute a proof of loss admitting that $5,056.20 was the extent of the damages (unless hidden damages were discovered during repair), even though Sibley contended that the trailer was a total loss. Sibley would not agree to this proposal unless furnished with a written one year guarantee on the repairs. This guarantee was not given. The ruling of the trial court assessing Lloyds with statutory penalties was correct.
In his answer to the appeal, Sibley contends that the award of $1,160 for an attorney fee is inadequate. In the trial court's reasons for judgment appears the following:
The Court is of the further opinion that plaintiff is entitled to reasonable attorney fees which the court feels would be an amount of $3500.00.
However, the judgment rendered by the trial court provided as follows:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of plaintiff and against the defendant for 12% statutory penalties on the total amount of the loss being 12% of $19,500.00 or $2340.00 plus *633 reasonable attorney fees set at $1160.00 for a total of $3500.00.
For purposes of this appeal, the trial court judgment is controlling, even though the trial judge intended otherwise. Hebert v. Hebert, 351 So.2d 1199 (La.1977); Harmon v. Harmon, 416 So.2d 614 (La.App. 5th Cir.1982). Although Sibley alleged in his petition that his attorney had performed 50 hours of work, no evidence of this was presented at the trial. However, proof of the value of an attorney's services is not necessary where the services are evident from the record and/or are rendered under the supervision of the court. Hebert v. Neyrey, 432 So.2d 396 (La.App. 1st Cir. 1983). After reviewing the entirety of the record, we conclude that the trial court attorney fee award is inadequate and it is increased to $3,500.
The trial court granted a penalty of $2,340 based on 12% of a recovery of $19,500. Since we have reduced the collision recovery to $15,500, this penalty award must be reduced to $1,860.
In his answer to the appeal, Sibley also requested an attorney fee for defending this appeal. Sibley is entitled to such an award. Cameron State Bank, 401 So.2d at 1094. The attorney fee award for defending this appeal is fixed at $1,000. The legal interest on this portion of the recovery shall commence to run from the date of rendition of this decision. Heard v. Blakney, 415 So.2d 487 (La.App. 1st Cir. 1982); Haynes v. Standard Fire Insurance Company, 370 So.2d 118 (La.App. 1st Cir.1979).

STORAGE FEES[1]
The trial court allowed Sibley to recover storage fees of $5.00 per day from June 6, 1981, until the date of trial of August 11, 1982, totaling $2,205, and $5.00 per day thereafter until paid in full.[2] Lloyds contends that this judgment is erroneous.
Sibley testified that after the accident on February 27, 1981, the damaged trailer was taken to his house and remained there until it was seized by GMAC on May 7, 1981. After the trailer was seized by the sheriff, it was taken to the Trading Post Wrecker Service yard where it was stored. The executory process suit was dismissed on May 15, 1981, and the trailer was released from seizure. However, Sibley allowed the trailer to remain in storage and did not seek its return prior to trial.
Sibley also testified that after the trailer was damaged he rented a substitute trailer for two months to continue his trucking business. Thereafter, he purchased a new trailer. Sibley did not pay his installment notes in March and April of 1981 and that is why GMAC instituted the executory process. After the GMAC suit was filed, Sibley made arrangements to pay off the past due notes, and the suit was dropped. Sibley has continued paying his monthly notes on the truck and damaged trailer since that time.
Sibley has failed to prove a causal relationship between Lloyds' tardy failure to pay the undisputed portion of the claim and the storage charges. Further, the Lloyds policy contains no coverage for storage fees. Cf. Ellis v. MFA Mutual Insurance Company, 419 So.2d 92, 96 n. 7 (La.App. 2nd Cir.1982), writ denied 422 So.2d 158 (La.1982). The trial court judgment awarding this element of damages is clearly wrong and is reversed.

CONCLUSION
For the foregoing reasons, the trial court collision damage award is reduced to $15,500; the 12% statutory penalty award is reduced to $1,860; the statutory penalty award for trial court attorney fees is increased to $3,500; the attorney fee award for defending this appeal is fixed at $1,000 with legal interest thereon from date of *634 rendition of this opinion until paid; and the trial court award for storage fees for the damaged trailer is reversed. In all other respects, the judgment of the trial court is affirmed. Lloyds is to pay for all costs of this appeal.
REVERSED IN PART, AMENDED AND AFFIRMED IN PART.
NOTES
[1] Neither Sibley nor Lloyds assert error in the trial court awards for towing charges and substitute trailer rental.
[2] By our calculations, it is 432 days from June 6, 1981, to August 11, 1982. At $5.00 per day this award should have been $2160.