492 So.2d 250 (1986)
Marguerite HERMANN, Plaintiff-Appellee,
v.
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, Defendant-Appellant.
No. 85-940.
Court of Appeal of Louisiana, Third Circuit.
August 4, 1986.
*251 Plauche, Smith & Nieset, Michael McNulty III, Lake Charles, for defendant-appellant.
Scofield, Bergstedt, Gerard, Mount & Veron, P.C., Richard E. Gerard, Jr., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
This is an appeal from a default judgment and denial of a new trial.
On October 27, 1980, Marguerite Hermann filed suit against Louisiana Health Service & Indemnity Company (Blue Cross), seeking recovery of medical and health care expenses under a health insurance policy issued to her by that company.
On August 16, 1984, a preliminary default was entered. On February 18, 1985, the default was confirmed. Judgment was rendered in favor of Ms. Hermann awarding health and accident insurance in the amount of $24,721.97, penalties in the amount of $49,443.94, and attorney's fees of $15,000.00. Blue Cross filed a motion for a new trial. After a hearing, the motion was denied, but the trial judge amended the original judgment to reduce the award of penalties to $24,721.97. Blue Cross appeals. We amend and affirm.
The issues raised on appeal are as follows: (1) whether the plaintiff granted the defendant an informal extension of time to file responsive pleadings which was still in effect when the default judgment was taken; (2) whether there was sufficient evidence to establish a prima facie case at the default hearing; (3) whether the trial court erred in granting penalties and attorney's fees; and (4) whether the award of attorney's fees was excessive.

THE INFORMAL AGREEMENT
Defendant argues that the parties had agreed to an informal extension of time to file responsive pleadings, which was in effect at the time plaintiff obtained the default judgment. Defendant argues that the default judgment should be reversed and a new trial should have been granted. We disagree.
The record reveals the following facts: The plaintiff filed suit on October 27, 1980. Shortly thereafter the attorney for the plaintiff agreed to grant the defendant an additional fifteen days beyond the normal delays within which to file responsive pleadings. The agreement was confirmed by a letter dated November 6, 1980. Subsequently the two attorneys began settlement negotiations. During this time it was understood that the fifteen day extension was no longer a deadline. Negotiations subsequently ceased and on June 19, 1984 plaintiff's attorney informed Blue Cross by letter to file responsive pleadings "as soon as possible." Shortly thereafter plaintiff's attorney received a call from Jack Groner, Vice President and General Counsel for Blue Cross, concerning the letter requesting responsive pleadings. Plaintiff's attorney testified that according to the telephone conversation, defendant would file responsive pleadings within three weeks. Mr. Groner testified that he merely told plaintiff's attorney that Blue Cross would get back with him within three weeks. Mr. *252 Groner failed to get back in touch with plaintiff's attorney and failed to file responsive pleadings. On August 16, 1984, a preliminary default was entered. On February 18, 1985 the default was confirmed.
Confirming a default without prior notice to the opposing counsel does not constitute ill practice unless plaintiff's attorney agrees to give his opponent notice before taking the default or leads him to believe notice will be given by pretending to negotiate a settlement. See Newfield v. Gruber, 457 So.2d 1203 (La.App. 1st Cir. 1984), and Allstate Insurance Co. v. Toups, 486 So.2d 304 (La.App. 3rd Cir. 1986).
In this case counsel for both parties initially agreed to an additional fifteen days beyond the normal delays within which to file responsive pleadings. However the two attorneys began settlement negotiations and developed an understanding, that the fifteen day extension was no longer a deadline. Negotiations ceased, however, and the defendant failed to file an answer for over three years. Under these facts there was not an agreement to give defendant's counsel notice before taking the default, however, there was action on the part of plaintiff's counsel during settlement negotiations which reasonably led defendant's counsel to the understanding that the original fifteen day extension was not the deadline. It cannot be said, however, that this action by the plaintiff's counsel provided defendant's counsel with an unlimited time to respond. This is especially true since plaintiff's counsel sent Blue Cross a letter on June 19, 1984 informing counsel to file responsive pleadings as soon as possible. This letter, coming almost 4 years after suit was filed, clearly put defendant's counsel on notice that there was no longer an understanding that responsive pleadings need not be filed, but that he demanded the pleadings be filed. Such a demand could only be construed that the failure to file a response immediately risked a default. Plaintiff's attorney received no response and after waiting 8 more months, confirmed the default.
The trial court, finding no ill practice had been committed, apparently believed the testimony of plaintiff's counsel and found that he had not agreed to an indefinite extension of time nor had he misled defendant. We find no manifest error in this factual determination. For these reasons we find no merit in defendant's argument.

SUFFICIENCY OF THE EVIDENCE
La.C.C.P. art. 1702 provides in pertinent part that "A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case."
The plaintiff has the burden of establishing a prima facie case by proving with competent evidence the essential elements of her claim as fully as if each of the allegations of the petition had been specifically denied. Halliday v. Water Works of Louisiana, Inc., 425 So.2d 949 (La.App. 5th Cir. 1983); Dozier v. Burleigh, 380 So.2d 197 (La.App. 3rd Cir.1980).
In this case, Mrs. Hermann had the burden of proving that she had been issued a policy of health insurance by Blue Cross; that she incurred medical expenses payable under the policy; that Blue Cross received actual notice of the expenses incurred; and that Blue Cross refused to pay.
The evidence in this case was sufficient to support the default judgment. There were three witnesses and two volumes of documents offered concerning unpaid claims. The testimony and documents at the confirmation of the default clearly established that Mrs. Hermann had been issued a policy of health insurance by Blue Cross. The policy provided that "[a]fter all eligible benefits have been paid under the Basic Coverage, and after the Major Medical Deductible ... has been met, the plan agrees to pay 80% of Major Medical Expenses" up to one million dollars.
The evidence also showed that she incurred medical expenses payable under the policy. The witnesses testified that Mrs. Hermann was involved in an automobile accident resulting in serious injuries.
*253 Mrs. Hermann was required to be hospitalized and afterwards was admitted to a rehabilitation center in Houston, Texas. The plaintiff testified that she incurred numerous medical bills as a result of the accident in the sum of $65,419.02. The bills were allowed into evidence by the trial court. Defendant complains that these bills constituted inadmissible hearsay. We disagree and find no error in the admissibility of these bills. See Howery v. Linton, 452 So.2d 295 (La.App. 2nd Cir.1984) and the cases cited therein. Therefore we find the plaintiff met her burden of proof that she incurred medical expenses payable under the policy.
Defendant argues that plaintiff failed to prove that Blue Cross received actual notice of the expenses incurred. We strongly disagree. The plaintiff introduced into evidence the "Explanation of Benefits" forms sent to her by Blue Cross on each of the medical bills submitted by the health care provider or by plaintiff. These exhibits reveal the date of notice Blue Cross received each of these bills, and reveal that bills totalling in excess of $59,000.00 were properly and timely submitted to Blue Cross. Excluding the bills from the rehabilitation center, the bills submitted to Blue Cross totalled over $34,800.00. On July 30, 1981, plaintiff's attorney also sent Blue Cross a letter informing them that Mrs. Hermann's total bill from the rehabilitation center totalled over $30,600.00 and sought information why the majority of this bill had not been paid by Blue Cross. This letter clearly notified Blue Cross of Mrs. Hermann's outstanding bill at the rehabilitation center. Therefore plaintiff proved Blue Cross received actual notice of over $65,400.00 in expenses incurred.
The "Explanation of Benefits" forms reveal that Blue Cross only paid $27,113.26 in benefits. The evidence in the record showed that defendant owed the unpaid balance of $24,721.97, and that Blue Cross refused to pay most of this sum. Blue Cross argues on appeal that the evidence submitted at the motion for a new trial shows that defendant paid $41,226.08 in benefits. Although Mr. Groner testified to this alleged fact, the evidence submitted by Blue Cross merely revealed the payment of just over $22,000.00 in benefits. Plaintiff testified that she received $27,113.26 in benefits and offered documentary evidence in support of her claim.
Appellant also argues that the trial court's judgment is beyond the scope of plaintiff's pleadings. We have reviewed the judgment and the pleadings and find no merit to defendant's argument.
For these reasons we find plaintiff submitted competent proof of her demand sufficient to establish a prima facie case, and proved the essential allegations of her petition as if they had been specifically denied by the defendant.

PENALTIES AND ATTORNEY'S FEES
Defendant argues that penalties and attorney's fees were improperly granted by the trial judge because plaintiff failed to present any evidence that Blue Cross failed to pay any medical and related bills more than thirty days after submission for consideration and payment as provided by R.S. 22:657.
However, as we have previously discussed, the "Explanation of Benefits" forms clearly reveal that the medical bills were not timely and properly paid after submission to Blue Cross by the health care providers or plaintiff. Blue Cross also failed to investigate or properly pay the medical bills incurred at the rehabilitation center although the evidence is clear that most of the bills were submitted to Blue Cross in 1981 and also the defendant received notice of outstanding bills by the July 1981 letter.
Defendant also argues that the evidence at the default hearing revealed that various checks totaling $5,816.50 were sent by defendant to plaintiff, and these checks were not cashed. Defendant contends that these checks were unconditional tenders of sums owed and that the trial court erred in imposing penalties for not paying these amounts.
*254 The insurer may avoid the imposition of penalties under R.S. 22:657 by the unconditional tender to the insured of that part of the claim for which there is no dispute. See Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983) for an analogous situation.
In this case the evidence reveals that defendant did unconditionally tender payment to the plaintiff in the sum of $1,782.00. We do not find, however, that the check in the sum of $4,034.50 was an unconditional tender. The accompanying letter from Blue Cross revealed that the check was offered for settlement of the claim.
For these reasons we find that $1,782.00 was unconditionally tendered to the plaintiff and that the trial court erred in awarding penalties in that amount.
The defendant also argues that the trial court abused its discretion in its award of $15,000.00 in attorney's fees. We agree.
The confirmation hearing was not protracted. Three witnesses testified and the documents and exhibits were introduced. Under these circumstances we conclude that $15,000.00 attorney fees is excessive and should be reduced to $7500.00.
For the above reasons, the judgment is amended to reduce penalties awarded to $22,939.97 and the attorney's fees to $7,500.00. In all other respects the judgment of the trial court is affirmed at appellant's costs.
AMENDED AND AFFIRMED.