SAVOIE, Judge.
This ease presents an issue of insurance coverage. Plaintiff, Ernest Clement, a galley hand employed by SONOCO, sued SO-NOCO, Rockwood Insurance Company (SO-NOCO’s worker’s compensation and employer’s liability insurer), and Atlantic-Pacific Marine Corporation (APMC) to recover damages under the Jones Act and General Maritime Law for injuries he sustained on February 3, 1987. The plaintiff alleged that he was a member of the crew of APMC Rig No. 14, which was owned by APMC, when the accident occurred. SO-NOCO filed a third party demand against the following defendants: Underwriters at Lloyds, London (Underwriters), SONOCO’s excess insurer; Gault, Armstrong and Kemble, Ltd. (Gault), SONOCO’s insurance broker; American Insurance Service (AIS), SONOCO’s agent; Rockwood; and Burnett J. Tappel, II and Insurance Analysis, Inc., SONOCO’s insurance consultant. SONO-CO claimed that Underwriters provided coverage to SONOCO for the plaintiff’s claim in excess of the $25,000.00 paid under Rockwood’s policy.
When the accident occurred, Underwriters provided excess Maritime Employer’s Liability (MEL) insurance for $475,000.00 in excess of the $25,000.00 MEL coverage under Rockwood. The Cover Note to the excess MEL policy included the condition: “Warranted Assured’s Employees covered under this policy do not work on or from Watercraft.” An endorsement in the policy excluded coverage for liability “to captain and crew of, and employees on assured’s owned and/or operated watercraft.”
The plaintiff settled his suit against SO-NOCO, Rockwood, and APMC on the main demand; the plaintiff settled the case for $275,000.00 of which SONOCO paid $68,-750.00 and APMC paid the remainder.[1] SONOCO’s third party demand against Gault was dismissed for lack of personal jurisdiction and the claim against Rock-wood was dismissed. The third party demand and various cross-claims between the remaining defendants' were tried by the judge. The judge found that the plaintiff was a seaman and that the excess MEL policy provided coverage for his claim against SONOCO. Because the judge found coverage, the third party demands against AIS, Tappel and Insurance Analysis were dismissed, as were all cross-claims. The judge also found Underwriters to have been arbitrary and capricious. Damages awarded to SONOCO consisted *1086 of the $68,750.00 it paid in settlement to the plaintiff, along with $525.00 in additional compensation paid to the plaintiff, $9,253.55 in attorney’s fees incurred by SO-NOCO to the date of settlement with the plaintiff on September 13, 1988, plus costs and interest.
From this judgment, Underwriters appeals, urging the following assignments of error:
1. The trial court erred in finding that the excess MEL policy issued by Underwriters provided coverage in this case and in ignoring the language of the Cover Note that “Assured’s employees covered under this policy do not work on or from watercraft.”
2. The trial court erred in finding Underwriters to be arbitrary and capricious in denying coverage and refusing to defend SONOCO against the plaintiff’s claim.
3. The trial court erred in finding that the plaintiff was a seaman.
SONOCO answered the appeal, contending that the trial court erred in failing to award attorney’s fees and costs for SONO-CO’s prosecution of its third party demand against Underwriters. American Insurance also answered the appeal contending that if this court should reverse the trial court’s decision, then American Insurance is entitled to a reversal of the judgment dismissing its third party demand against Insurance Analysis.
ASSIGNMENT OF ERROR NO. 1: COVERAGE
Underwriters contends that the trial judge erred in finding that the policy was ambiguous, and in therefore finding that the policy should be interpreted to find coverage for the plaintiff. Underwriters contends that because the plaintiff was injured while working on watercraft, the policy does not cover him based on the language in the Cover Note.
The trial judge in his reasons initially stated that he was looking at the policy as a whole, including the Cover Note, and that he was not considering parol evidence. The trial judge stated that if the Cover Note condition was read as Underwriters interpreted it, SONOCO would have virtually no excess coverage for its activities. The judge then found the Cover Note condition ambiguous when read with the exclusion in the endorsement, and he resolved the ambiguity against the insurer.
Underwriters cites several Civil Code articles stating that the Cover Note condition should be interpreted in a sense that renders it effective. It contends that the condition is additional to the exclusion for SO-NOCO employees working on watercraft owned by SONOCO.
SONOCO argues that the Cover Note condition is not a part of the policy and that it cannot be construed as an exclusion. We pretermit ruling on these contentions, finding that the trial court was correct in holding that the Cover Note condition was ambiguous when read with the rest of the policy.
The exclusion within the policy excludes coverage for SONOCO’s employees on watercraft owned and/or operated by SONO-CO. However, the Cover Note condition would exclude coverage for SONOCO’s employees in this situation as well as those employees working on or from watercraft owned by third parties. Furthermore, under a list of situations to which Underwriter’s policy would not apply, the following situation was lined out in the policy: “to the liability of the Employer to provide transportation, wages, maintenance and cure to any employee; ...” The deletion of this provision shows an intention to cover seamen employed by SONOCO injured on vessels owned and/or operated by third parties where maintenance and cure claims are concerned.
SONOCO contended successfully that practically all of its employees would be • excluded from excess coverage if the Cover Note condition was interpreted as Underwriters suggested. Underwriters argues that only those employees working offshore on or from any watercraft would not be covered and that other SONOCO employees would be covered. For example, a SONOCO employee who was injured while *1087 being transported to an offshore location aboard watercraft owned and operated by others would be covered. Yet, in this example, to obtain Jones Act coverage, the SONOCO employee would have to be a seaman and thus would have to have a substantial connection with the vessel; this substantial connection would result in the employee working on or from watercraft and, therefore being barred from coverage by the Cover Note condition.
Since the Underwriters policy excluded coverage for state worker’s compensation claims and Longshoremen and Harbor Workers Act claims, the only remaining types of claims are general maritime torts and Jones Act claims. Yet the Cover Note condition excludes all Jones Act claims. Underwriters was aware that 5% of SONO-CO’s employees were Jones Act employees based on an insurance application SONOCO filled out and submitted to it. We agree with SONOCO’s contention that Underwriters’ condition would exclude coverage for most of SONOCO’s employees.
Based on the language of the endorsement the Underwriters policy was intended to provide Jones Act coverage to seamen who worked from non-owned vessels. However, the Cover Note condition would nullify that coverage, as no seamen would be covered. Because the policy can be interpreted in two ways — (1) to provide coverage to employees on watercraft owned by third parties or (2) to provide no coverage to any employee working from any watercraft, owned by SONOCO or by a third party — we agree with the trial court’s finding that it is ambiguous and should be interpreted in favor of the insured. See Breland v. Schilling, 550 So.2d 609, 610 (La.1989). This assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 2 AND ANSWER TO APPEAL: PENALTIES AND ATTORNEY’S FEES
Underwriters contends that the trial judge erred in awarding SONOCO penalties and attorney’s fees, and SONOCO contends that the trial judge should have awarded more penalties and attorney’s fees.
LSA-R.S. 22:658 provides that where an insurer’s failure to make payment on a loss is found to be arbitrary, capricious, or without probable cause, the insured is entitled to an award of ten percent of the total amount of the loss with reasonable attorney’s fees for the prosecution and collection of the loss.[2] A trial court’s conclusion concerning the assessment of penalties and attorney’s fees is in part a factual determination which should not be disturbed on appeal absent manifest error. Sibley v. Insured Lloyds, 442 So.2d 627, 632 (La.App. 1st Cir.1983).
“An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney’s fees.” Carney v. American Fire & Indemnity Co., 371 So.2d 815, 819 (La.1979).
As a general proposition, if an insurance policy is ambiguous, the court will adopt any reasonable interpretation which favors the insured. An insurer is not precluded from seeking a judicial determination of its contractual liability, but it must bear the expenses of that determination and shoulder the risk of penalties and attorney’s fees should its interpretation of the policy prove erroneous.
*1088 Boudreaux v. Fireman’s Fund Insurance Co., 654 F.2d 447 (5th Cir.1981). (Citations omitted). ,
The trial judge found that Underwriters was arbitrary and capricious because “their position can’t be substantiated when you read the policy as a whole.... ” The judge then awarded attorney’s fees incurred only up to the trial of the third party demand, reasoning as follows:
With regards to the amount of attorneys fees that is owed by Lloyd’s [Underwriters] to SONOCO, although I feel that there would have been no attorneys fees incurred by SONOCO had Lloyd’s [Underwriters] done what they should have done initially which was to defend this claim_ [The] only appropriate attorneys fees which are owed by Lloyd’s [Underwriters] are the attorneys fees which were incurred properly up until the settlement of this case in September of 1988. Even though they were arbitrary and capricious I don’t — I think the attorneys fees because of the dispute that existed between SONOCO and Lloyd’s [Underwriters] after that point were simply the claims asserted by SO-NOCO against Lloyd’s [Underwriters] just as the claim of any other individual asserting a claim against another individual having to bear their own respective attorneys fees unless statutorily it’s provided for.
Unless I’ve missed a statutory provision that would provide for the attorneys fees to be paid in full by Lloyd’s [Underwriters], SONOCO’s not entitled to be reimbursed.
Underwriters contends that it did not act arbitrarily and capriciously in denying coverage, and that its actions were reasonable. In this case, we cannot say that the trial judge was manifestly erroneous in finding Underwriters to be arbitrary and capricious. Despite the risk that the courts could interpret the policy as ambiguous due to the Cover Note condition and the exclusion in the endorsement, Underwriters erroneously chose to interpret its policy as not providing coverage for the plaintiff’s claim in this case.
SONOCO contends that the trial judge should have awarded it attorney’s fees for the trial of the third party demand and that we should award it attorney’s fees for this appeal. We agree with these contentions.
LSA-R.S. 22:658 provides for “all reasonable attorney’s fees for the prosecution and collection of such loss.” This language would encompass SONOCO’s attorney’s fees for its prosecution of the third party demand because the third party demand was part of the “prosecution and collection of such loss.” See Frederick v. Electro-Coal Transfer Corporation, 548 F.Supp. 83, 88 (E.D.La.1982). We will increase the award to SONOCO to $15,376.76 to include the attorney’s fees incurred in prosecuting the third party demand.
SONOCO is also entitled to attorney’s fees for answering and defending this appeal. Sibley, 442 So.2d at 633. The attorney’s fees for answering and defending this appeal is fixed at $1,000.00. The legal interest on this part of the recovery shall begin to run from the date of rendition of this decision. Sibley, 442 So.2d at 633.
ASSIGNMENT OF ERROR NO. 3: SEAMAN STATUS
Underwriters contends the trial judge erred in finding the plaintiff to be a seaman when the accident occurred. The trial judge based his finding that the plaintiff was a seaman on the testimony of John Sontheimer, president and sole owner of SONOCO and on the personnel records of the plaintiff. The judge stated:
And if you view the work history of Mr. Clement it appears to the court that he was more or less permanently assigned to the AP-14 even though Mr. Sontheimer clearly stated that he didn’t assign an employee to a particular barge or particular location. He reserved the flexibility of being able to send a guy wherever he wanted; I appreciate that. But if you look at the work history of this man it’s obvious to the court that he was more or less permanently assigned *1089 to that particular vessel and he did not work on that vessel, only when that vessel was apparently stacked. That vessel had a kitchen on it and this man works in the kitchen, contributed to the function of the vessel and the mission of the vessel.
I’m aware of Barret [sic] v. Chevron and its — I guess restrictions are a more tightly interpretation of who is a seaman. The case is found at 781 F.2d 1067. Probably everybody that has anything to do with any kind of Jones Act cases has read that case on more than one occasion, and of course, the landmark case of Offshore Company vs. Robertson [Robison] at 266 F.2d 769. I think all sides cited those basic cases plus other cases that have come both before and after Barret [sic]. The court has no problem whatsoever in determining that Mr. Clement is a seaman after reviewing the documentation that was provided to the court.
In Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986), the court reiterated the standard set forth in Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir.1959) for determining that a worker is a seaman:
(1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.
Barrett, 781 F.2d at 1072. (Citation omitted).
While Underwriters admits the plaintiff was on a vessel when injured, Underwriters contends that the plaintiff was not permanently assigned to a vessel and that the plaintiff did not perform a substantial part of his work on the vessel. To support its contention, Underwriters relies on the plaintiffs personnel records which show that from May through November, 1986, he worked on fixed structures.
However, the personnel records also show that during the plaintiffs employment from October, 1985 through February, 1987, the plaintiff worked on APMC 14 slightly over half that time. According to Barrett, “if the employee’s regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined ‘in the context of his entire employment’ with his current employer.” Barrett, 781 F.2d at 1075. (Footnote and citation omitted). We find the plaintiff distinguishable from the plaintiff in Barrett who only spent 20-30% of his employment on a vessel during his one year employment.
The first prong of the seaman status test is an inherently factual question. Barrett, 781 F.2d at 1074. As the Fifth Circuit pointed out, “In most cases the facts and inferences to be drawn from them may lead to either decision by the factfinder, for the Robison test is inherently factual, and, like all applications of a legal standard to widely varying factual situations, may inevitably result in some inconsistent determination of status.” The factual findings of the trial judge on this issue cannot be disturbed unless they are manifestly erroneous. Danos v. McDermott Inc., 563 So.2d 968 (La.App. 1st Cir.), writ not considered, 566 So.2d 386 (La.1990). We cannot say that the trial court’s findings are manifestly erroneous; this assignment of error has no merit.
For the foregoing reasons, the statutory penalty award for attorney’s fees is increased to $15,376.76; the attorney’s fee award for answering and defending the appeal is fixed at $1,000.00 with legal interest from date of rendition of this opinion until paid. In all other respects, the judgment of the trial court is affirmed. Underwriters is to pay all costs of this appeal.
*1090 AMENDED IN PART, AND AS AMENDED, AFFIRMED.

. Rockwood Insurance had previously paid its primary coverage to the plaintiff and was dismissed from the suit without making any additional contribution toward settlement.

. LSA-R.S. 22:658 reads in pertinent part as follows:
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.