570 So.2d 460 (1990)
Wilfred C. LaHAYE, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
No. 89-60.
Court of Appeal of Louisiana, Third Circuit.
October 26, 1990.
As Amended and Recast on Grant of Rehearing in Part December 14, 1990.
Writ Denied February 22, 1991.
*462 Morrow & Morrow, Patrick C. Morrow, Opelousas, for plaintiff-appellant.
Roy & Hattan, M. Candice Hattan, Lafayette, for defendant-appellee.
Before LABORDE, KNOLL and KING, JJ.
*463 KNOLL, Judge.
The various issues raised in this appeal address the jury's assessment of the damages Wilfred C. LaHaye was entitled to receive from Allstate Insurance Company (hereafter Allstate) for the total loss of his home and contents as a result of a fire, over and above the $185,583.90 Allstate already paid, and whether the jury erred in denying his claim for penalties and attorney's fees.
The jury, by unanimous verdict, found that LaHaye was entitled to payment under his insurance policy in the total amount of $184,600 ($145,900 for loss of his home; $35,000 for loss of the contents; and, $3,700 for additional living expenses), a sum which was less than the amount already paid by Allstate, and that Allstate was not liable for the payment of penalties and attorney's fees. Subsequently, the trial court granted Allstate's motion for judgment notwithstanding the verdict, reducing the jury's award for additional living expenses from $3,700 to $3,220, the amount established by the evidence, and denied LaHaye's motions for JNOV, additur, and a new trial.
LaHaye appeals contending that the trial court erred: (1) in refusing to grant his motion for JNOV on the issue of his entitlement to penalties and attorney's fees; (2) in allowing testimony referring to the bid of Paul Patin, Allstate's contractor, on the cost of rebuilding LaHaye's home, as well as references to an engineering report on the structural soundness of the concrete slab of the home; (3) in not increasing the jury verdict to $163,427.80 for the cost of rebuilding his home; (4) in allowing LaHaye's application for insurance from Allstate into evidence; (5) in allowing Allstate to enter into evidence LaHaye's past arrests, prior lawsuits filed by him, a prior loan application, his income figures, and social security benefits which he receives; (6) in allowing Allstate's entire investigative file into evidence; (7) in not awarding the total amount of the contents insurance coverage provided in the policy of insurance; (8) in granting Allstate's JNOV; and, (9) in assessing the costs of trial to LaHaye.

FACTS
On May 16, 1986, fire destroyed LaHaye's residence in Opelousas. Allstate does not dispute that the house fire was a covered loss or that the house and contents were a total loss. Rather, the controversy involves the valuation of the loss and whether Allstate is liable for penalties and attorney's fees for the arbitrary and capricious failure to pay the claim within the statutory time period. At the time of the fire, LaHaye had the following homeowner's insurance coverage with Allstate: $175,000 dwelling protection with a replacement guarantee; $87,500 contents protection; $500 reimbursement for fire department charges; $8,750 shrubbery protection; and, debris removal protection.
Three days after the fire, Kern Hamilton, Allstate's senior claims adjustor, met with LaHaye, and advanced money for temporary living expenses. At that time, Hamilton gave LaHaye an Allstate "proof of loss" form to complete and return to his office. The following day, Hamilton inspected LaHaye's home site, and determined that the house and contents were a total loss. Hamilton then requested a bid for rebuilding the house from Paul Patin. In the meantime, LaHaye at Allstate's urging, asked Leon Guillory to provide him with an estimate for rebuilding the home. Hamilton received Patin's bid of $141,400 on June 10, 1986, and Guillory's bid of $163,427.80 on June 25, 1986. The discrepancy between the two bids centered on whether fire cracked the old slab, or whether the cracks resulted from ground settling unconnected with the fire. Based on Patin's bid, Allstate tendered a check to LaHaye on August 14, 1986, in the amount of $146,300; this sum represented $141,400 for dwelling replacement, $4,500 for debris removal, and $400 for additional living expenses.
Approximately one month after the fire, LaHaye estimated his content loss at $110,000. Inquiries regarding this estimation were initiated by Allstate, and supplemental *464 explanations were provided by LaHaye. After LaHaye and Allstate were unable to reach any further agreement on the estimation of the content loss, Allstate sent LaHaye a check for the loss of contents in the amount of $37,693.90. This litigation then followed.

DWELLING VALUATION
LaHaye first contends that the jury was manifestly erroneous in failing to award $163,427.80 to reconstruct his home, and that the trial court erred in denying his motion for JNOV on this issue.
LaHaye first argues that the trial court erroneously admitted hearsay testimony into evidence. In particular, he cites the testimony of Hamilton, Allstate's claims adjustor, about the bid of Paul Patin on the construction cost of LaHaye's home, as well as Russell Bellard's engineering report on the condition of the concrete slab, and the introduction of those two documents into evidence as part of Allstate's investigative file. Neither Patin nor Bellard testified at trial.[1]
It is well settled in our jurisprudence that a party may, by an affirmative act or omission, waive or be estopped to make objections to the admission or exclusion of evidence. Such waiver or estoppel may arise from failure to object or from acts done or omitted before the evidence is offered. Pitts v. Bailes, 551 So.2d 1363 (La. App. 3rd Cir.), writs denied, 553 So.2d 860 (La.1989) and 556 So.2d 1262 (La.1990).
At trial, LaHaye called Hamilton under cross-examination. Among the specifics LaHaye elicited from Hamilton were the amount of Patin's bid, whether Patin would guarantee the house if he reconstructed it on the spoiled and cracked concrete slab, and the substance of conversations between Patin and Allstate regarding the bid. Hamilton also testified that Allstate hired an engineer to resolve questions of the structural integrity of the concrete slab. On direct examination, LaHaye objected when Allstate attempted to elicit testimony regarding Patin's bid and the conclusions of the engineer's report. In overruling the objection, the trial court instructed the jury that this evidence was admissible only for the purpose of its determination of whether Allstate was arbitrary and capricious in not paying for the cost of a new slab, and that it could not consider "the truth or falsity" of the reports because Patin and Bellard were not present to testify.
After carefully reviewing the record, we find that LaHaye waived his right to object to this evidence when he elicited extensive testimony from Hamilton about Patin's bid and Allstate's utilization of Bellard.
We now turn our attention to LaHaye's bifold contention that the jury erred in failing to award $163,427.80 for the replacement of his home, and that the trial court was manifestly erroneous in denying his motion for JNOV and additur. Finding Louisiana's Valued Policy Law applicable, we pretermit LaHaye's argument and award him recovery to the extent of the policy limits established in the insurance contract.
At the time of LaHaye's loss, the Louisiana Valued Policy Law provided that an insurer must pay an insured the full face value of a policy where the destruction of the building constituted a total loss. In pertinent part, LSA-R.S. 22:695(A) (repealed by Acts 1988, No. 951, eff. prospectively from July 27, 1988) provided:
"A. Under any fire insurance policy,... on any inanimate property, immovable by nature or destination, situated within the state of Louisiana, the insurer shall pay to the insured, in case of total destruction, without criminal fault on the part of the insured or the insured's assigns the total amount for which the property is insured, at the time of such *465 total destruction, in the policy of such insurer."[2]
The intent of Louisiana's Valued Policy Law is to protect the insured against an insurer who would seek to give the insured less than his money's worth by paying out less in recovery than the insured paid for in premiums. McKenzie and Johnson, Insurance Law and Practice, p. 645 (West 1986).
In the case sub judice, it is undisputed that LaHaye's home was insured for $175,000, and that the house was a total loss as a result of the fire. Accordingly, we find that once Allstate became aware that the home was a total loss, its duty under Louisiana law was to unconditionally tender $175,000, the limits provided under the dwelling coverage. Therefore, based on the evidence, we conclude that the jury was manifestly erroneous in only awarding LaHaye $141,000 for the replacement of the home, and the trial court erred in denying LaHaye's motion for JNOV or additur to increase the jury award to $175,000, the policy limits for the total loss of the dwelling.

VALUATION OF CONTENTS
LaHaye contends that the jury erred in limiting his recovery for the loss of the contents of his home to $35,000, and that because of various erroneous evidentiary rulings, the trial court was clearly wrong in failing to grant him a new trial on this issue.
Before addressing the law on this issue, it is necessary to provide a thumbnail sketch of the relative facts so that the various issues may be viewed in light of the positions taken by the litigants prior to the onset of litigation.
On June 25, 1986, LaHaye returned the Allstate proof of loss form to Hamilton which had been given to him the day after the fire, estimating his contents loss at $110,000. Because of the amount of loss claimed, Hamilton requested an itemization of the contents destroyed in the fire from LaHaye, stating the age of each item and an estimated original purchase price for each. In mid-July, LaHaye presented Hamilton with an itemized listing of contents, totaling $101,566.92. Still not satisfied, Hamilton asked LaHaye to provide original receipts for numerous items listed; LaHaye explained that all the original receipts were lost in the fire. After Hamilton refused to accept several estimates in lieu of original receipts for items lost in the fire, LaHaye refused to obtain any other supporting documentation. On September 12, 1986, Allstate paid LaHaye $37,693.90 for the household contents lost in the fire.
From the outset we reject LaHaye's contention that LSA-R.S. 22:667, a limited value policy statute for movable property, required Allstate to pay $87,500, the maximum coverage available under the insurance contract, because the contents were a total loss. LSA-R.S. 22:667 provides in pertinent part:
"A. In any case in which a policy includes coverage for loss of or damage to personal property of the insured, from whatever cause, if the insurer places a valuation upon the specific item of covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, the insurer shall compute any covered loss of or damage to such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of prominent size, the actual method of such loss computation by the insurer.
B. (1) The provisions of this Section shall not apply to any of the following:
* * * * * *
(c) Insurance on a group of items insured as contents insurance on household *466 items, unless specifically insured under Subsection A of this Section."
From just a cursory reading of LSA-R.S. 22:667, it is clear that the valued policy law relative to household items is specifically inapplicable unless the insurer, pursuant to paragraph "A", values the specific items of covered property, and uses the valuation of those items to determine the insurance premium.
In the case sub judice, the evidence shows that LaHaye's insurance policy covered the household items as a group, and not as items which were specifically valued. Therefore, we find that LaHaye is not entitled to $87,500, the full amount of the contents coverage, because there was a total loss of the items; rather, it was incumbent upon LaHaye to prove, as outlined hereinafter, the cash value of his loss.
LaHaye contends, in the alternative, that he proved by a preponderance of the evidence that the contents he lost in the fire had a value of at least $87,500. Accordingly, he argues that the jury was manifestly erroneous in awarding only $35,000.
To collect under an insurance policy for a loss, the insured must prove the extent of his loss by a preponderance of the evidence. Mercer v. St. Paul Fire & Marine Insurance Company, 318 So.2d 111 (La.App. 2nd Cir.1975). In a situation, such as the one present, where fire totally destroys an insured's house and contents, the insured is not required to secure original receipts or supporting vouchers from the stores where specific items were purchased. Tolbird v. Southern Insurance Company, 130 So.2d 535 (La.App. 2nd Cir. 1961). The adoption of a contrary rule would establish "a rule of required valuation so utterly and completely impossible of fulfillment in the vast majority of cases as to prevent any recovery by any claimant under any policy covering an insured risk." Id. at 538. The adoption of the rule of proof outlined in Tolbird is commonsensical, and recognizes the observation noted in Stewart v. Palmisano, 31 So.2d 27, 31 (La. App.Orl.1947), that it is "common knowledge that a householder accumulates his effects over a period of years, and that they are purchased from time to time in various establishments."
Allstate conceded that it was not denying LaHaye's claim for payment of the contents because of any material misrepresentations made in his application for insurance. Rather, it is abundantly clear that its defense for non-payment for approximately twenty-eight (28) items was pitched on an attack of the credibility of LaHaye and his wife, concerning their possession and loss of these contested items.
The finder of fact, be it judge or jury, should assess the credibility of witnesses, expert or lay, to determine the most credible and realistic evidence. Guidry v. Davis, 382 So.2d 250 (La.App. 3rd Cir.1980). In reaching conclusions, the finder of fact need not accept all of the testimony of any witness as being true or false and may believe and accept any part or parts of a witness's testimony and refuse to accept any other part or parts thereof.
It is well settled in Louisiana that the trial court's findings of fact are entitled to great weight, and we may not substitute our own evaluations and inferences for the reasonable evaluations and inferences of the trial court, unless those conclusions are clearly erroneous. Harrigan v. Freeman, 498 So.2d 58 (La.App. 1st Cir.1986).
In attacking the credibility of LaHaye and his wife, Allstate explored numerous evidentiary avenues, seventeen of which LaHaye has assigned as erroneous.
To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection. Pitts, supra. Requiring a contemporaneous objection gives an opportunity to the trial court to assess the admissibility of the evidence before judgment, and enables this court to expeditiously determine the merits of an appeal.
In the case sub judice, a thorough inspection of the record reveals that out of seventeen specific evidentiary complaints, *467 LaHaye contemporaneously objected to only three of them. Failure to object to hearsay or secondary evidence when admitted at trial constitutes a waiver of right to object to its admissibility and such evidence may then be considered and given probative effect. Taunton v. Cane Air, Inc., 405 So.2d 624 (La.App. 3rd Cir.1981). Likewise, a rule of evidence not invoked at trial is waived and may not be used later to exclude evidence. Wade v. Joffrion, 387 So.2d 1265 (La.App. 1st Cir.1980).
Of LaHaye's three objections, one was sustained when Allstate attempted to elicit testimony of whether LaHaye's home had ever been raided by the police; LaHaye's hearsay objection to questions regarding his purchase of the vacuum cleaner lost in the fire, and his objection to the introduction into evidence of Allstate's entire investigative file were overruled. Accordingly, we will limit our review to the two evidentiary questions overruled by the trial court.
The first item allowed into evidence over LaHaye's objection was Hamilton's testimony concerning an $895 vacuum cleaner purportedly lost in the fire. In the course of Hamilton's testimony, LaHaye objected when Hamilton started to divulge hearsay testimony of an unidentified clerk at the store where the vacuum was purchased that they had no record of the sale, and that the purported salesman identified by LaHaye had never worked for them.
In ruling on LaHaye's objection, the trial court concluded, as it would numerous times during trial, that the testimony about LaHaye's ownership of the vacuum was inadmissible hearsay, but that it was admissible for the jury's consideration of whether Allstate acted arbitrarily and capriciously in denying LaHaye's claim. The trial court then instructed the jury accordingly.
The second item introduced into evidence over LaHaye's objection was Allstate's entire investigative file. At the conclusion of Hamilton's testimony, Allstate moved to introduce the investigative file (many of the items contained therein Hamilton had referred to on numerous occasions during his testimony). Once again, the trial court ruled that even though the file contained evidence which might be subject to various objections, it was admissible to evaluate LaHaye's claim that Allstate acted arbitrarily and capriciously in its denial of his claim.
After carefully reviewing the trial court's rulings on the two evidentiary issues presented, we cannot say that the trial court abused its discretion when it allowed the introduction of this evidence for the limited consideration of the issue of penalties and attorney's fees. Though, as recognized by us in Mitchell v. State Farm Fire and Cas. Co., 473 So.2d 399 (La.App. 3rd Cir.1985), writ denied, 477 So.2d 710 (La. 1985), we can understand how it would be difficult for the jury to distinguish the use of this evidence between the two major segments of the case it was asked to decide, the trial court continuously cautioned it of the limitations imposed on its consideration of the items introduced.
Having disposed of the evidentiary questions presented, we turn our attention to the broader question of whether the jury was manifestly erroneous in awarding LaHaye only $35,000 for the contents lost in the fire.
Allstate introduced evidence or questioned LaHaye, without objection, about whether he had been charged with simple battery or as an habitual offender, and whether his home had been used as a gambling establishment. In addition to Allstate's questioning of LaHaye's credibility, it also presented the jury with evidence which would tend to indicate that LaHaye was financially unable to have acquired all of the items listed during the two year period preceding the fire. LaHaye settled a personal injury case in 1985 for approximately $150,000, and borrowed $45,000 from St. Landry Homestead in November of 1985, securing the loan with a first mortgage on the house which later burned. His only other source of income was $517 a month from Social Security. Moreover, Allstate introduced four judgments into evidence *468 which had been entered against LaHaye prior to the fire.
After carefully reviewing the record, we find that the jury had evidence before it by which it could have limited LaHaye's recovery for the contents which he lost as a result of the fire. Nevertheless, for reasons expressed hereinafter, we find that the jury was manifestly erroneous in rejecting all of the contested items.
LaHaye's testimony of ownership of several items was corroborated by the testimony of his wife, and Reginald Bertrand, a friend who did electrical work in the house sometime prior to the fire, as well as by photographs and, to a limited degree, by attachments to one of LaHaye's creditor's suits against him on open account which contained invoices for LaHaye's purchase of several of the contested items.[3] Considering the age of the items, each being approximately two years old, and an estimated useful life of approximately seven years, a reasonable depreciation factor would be 2/7 or approximately 28%; thus we find that the jury should have awarded LaHaye an additional $24,749.36 for the loss of these additional contested items that he proved were destroyed.

ADDITIONAL LIVING EXPENSES
LaHaye contends that the trial court was manifestly erroneous in granting Allstate's JNOV, reducing the jury award for additional living expenses from $3,700 to $3,220.
The statutory law governing a motion for JNOV is set out in LSA-C.C.P. Art. 1811, not repeated herein, and the jurisprudential criterion for evaluating the disposition of the motion is well settled. See Pitts, supra. Suffice it to say that in reviewing a JNOV, we apply the manifest error rule to the trial court's conclusions on liability and quantum.
In the case sub judice, the relevant provisions of Allstate's insurance policy provide:
"Loss of Use of Your Residence Premises
a) We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a loss we cover makes your residence premises uninhabitable.
* * * * * *
No deductible applies to this protection."
The trial court found in its written reasons for judgment that from the actions of the jury during deliberation, it realized that the jury was attempting to award an amount equivalent to what Allstate had already paid.
In making this determination, the trial court relied upon the following facts: Although the jury returned a verdict in favor of LaHaye after initial deliberation, it specified that LaHaye was not entitled to receive any money from Allstate. Considering this verdict to be inconsistent, the trial court instructed the jury and returned them to the jury room for further consultation. During this period of reconsideration, the jury requested a summary of the amounts Allstate already paid to LaHaye for the loss of his dwelling, his contents loss, and the additional living expenses. Not wishing to provide such a summary, the trial court, primarily on the insistence of LaHaye, instead provided the jury with photostatic copies of all checks issued to LaHaye.
Although we agree with the trial court's disposition of Allstate's motion for JNOV, we rest our determination on different grounds. After carefully reviewing the evidence, we find the record void of any preponderate evidence which would have entitled LaHaye to an additional award for living expenses. Accordingly, we find that reasonable men could not have arrived at a contrary verdict on the facts at issue, thus an award for living expenses in addition to *469 what had already been paid was not justified by the evidence presented.

PENALTIES AND ATTORNEY'S FEES
LaHaye contends that the jury was manifestly erroneous in failing to award penalties and attorney's fees.
LSA-R.S. 22:658 (as amended by Act 778, 1985the statute in effect at the time of the fire) provides that all insurers issuing policies like that of Allstate shall pay the amount of any claim due an insured within sixty days after receipt of satisfactory proofs of loss from the insured. If the insurer fails to make such payment and such failure is arbitrary, capricious, or without probable cause, the insurer shall be subject to penalties of twelve percent (12%) of the total amount of the loss and a reasonable attorney fee for the prosecution and collection of the loss. This statute is penal and must be strictly construed. The burden is on the claimant to prove lack of probable cause, arbitrariness, or capriciousness. Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983).
A fact finder's conclusion concerning the assessment of statutory penalties and attorney's fees is in part a factual determination which should not be disturbed in the absence of a finding that it is manifestly erroneous. Cameron State Bank v. American Emp. Ins. Co., 401 So.2d 1090 (La.App. 3rd Cir.1981), writ denied, 409 So.2d 674 (La.1981).
Where there is a reasonable disagreement between the insured and the insurer as to the amount of a loss, the insurer's refusal to pay is not arbitrary, capricious, or without probable cause, and failure to pay within the statutory delay does not subject the insurer to penalties. However, if part of a claim for property damage is not disputed, failure of the insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to liability for penalties on the entire claim. To avoid the imposition of penalties and attorney's fees, the insurer must unconditionally tender to the insured that part of the claim for which there is no dispute. Sibley, supra, at page 632.
In the case sub judice, Allstate never disputed that LaHaye's home was a total loss, and conceded that the fire was not of a suspicious nature. Despite this and the clear understanding that under Louisiana's Valued Policy Law it was liable for the full amount of coverage for the loss of a dwelling, $175,000, Allstate only paid LaHaye the sum of $141,000 on August 14, 1986. Accordingly, we find that LaHaye is entitled to the twelve percent (12%) penalty on the $34,000 unpaid difference.
Likewise, we find that LaHaye is entitled to the twelve percent (12%) penalty on his claim for payment for the shrubbery replacement provisions of the policy. The record is clear that although Allstate received Guillory's bid which included $1,000 for shrubbery replacement on June 25, it did not pay the cost of shrubbery replacement until November 17, almost five (5) months later. Hamilton, Allstate's claims adjustor, testified that the amount of shrubbery loss was undisputed and that his failure to pay was an unfortunate oversight.
We find that Allstate is liable for penalties and attorney's fees on the additional award we have made for LaHaye's contents loss. We do not condone many of the practices employed by Allstate in its investigation of this claim. Accordingly, we find that Allstate was arbitrary and capricious in failing to pay the full extent of the contents loss claim.
In connection with the trial of this case and its appeal, we also find that LaHaye is entitled to receive reasonable attorney's fees in the amount of $10,000.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and recast as follows:
[*]IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of WILFRED C. LaHAYE and against Allstate Insurance Company in the amount of TWO HUNDRED THIRTY FOUR THOUSAND *470 SEVEN HUNDRED FORTY NINE AND 36/100 DOLLARS ($175,000 for the loss of the dwelling and $59,749.36 [$35,000.00 plus the additional $24,749.36]) for contents loss, less the sums already paid, together with legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment for penalties in favor of WILFRED C. LaHAYE and against ALLSTATE INSURANCE COMPANY in the amount of SEVEN THOUSAND ONE HUNDRED SIXTY NINE AND 92/100 DOLLARS ($7,169.92), being twelve percent (12%) of the additional $34,000 awarded for LaHaye's dwelling loss, the additional $24,749.36 awarded for LaHaye's content loss, and the untimely payment of $1,000 for his shrubbery loss, together with legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment for attorney's fees in favor of WILFRED C. LaHAYE and against ALLSTATE INSURANCE COMPANY in the amount of $10,000, together with legal interest from date of judicial demand, until paid.
Costs of the trial court and this appeal are assessed to Allstate Insurance Company.
All aspects of the judgment of the trial court not inconsistent herewith are affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
PER CURIAM.
Plaintiff, Wilfred C. LaHaye, requests a rehearing for a clarification of our October 26, 1990, decree.
It is well-settled law that appellate courts have the power to correct their judgments without the necessity of granting a rehearing to do so. State, Dept. of Highways v. Eubanks, 345 So.2d 533 (La.App. 3rd Cir. 1977).
In the decree, this court inadvertently omitted the jury award of $35,000 for the contents loss. Accordingly, the first paragraph of the decree is hereby amended and recast.[**]
In all other respects, our original decree is affirmed.
NOTES
[1] Although we have chosen to consider this evidentiary issue, we find that its resolution adverse to LaHaye is not determinative of the larger question presented. Nevertheless, we find that our consideration of this issue is required to present a more complete picture of the various evidentiary and procedural complexities, resulting from the trial of the issues of quantum and penalties at the same time.
[2] The actual cash value limitations provided for in LSA-R.S. 22:695(B) are inapplicable to the case sub judice since there is no blanket type policy involved. Likewise, under the general provisions of Allstate's policy which conform conflicting policy provisions to Louisiana law, the modes of settlement provided in Section 1(5) of the Allstate policy are inapplicable.
[3] The items we find sufficiently proven: freezer, refrigerator, grandfather clock, projection television, end tables, coffee table, console television, dining room set, water bedroom set, vacuum cleaner, computer, deep fat fryer, drum set, gold chain were valued by LaHaye at $34,704.11.
[*] This paragraph has been recast in accord with the order on rehearing, infra.
[**] The decree, supra, has been recast in accord with this order.