NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-1496

STATE IN THE INTEREST OF J.F., J.F., AND A.F.

**********
APPEAL FROM THE
OPELOUSAS CITY COURT
PARISH OF ST. LANDRY, NO. JV-7033
HONORABLE KENNETH BOAGNI, JR., CITY COURT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and Glenn B. Gremillion, Judges.

**AFFIRMED.**

**Hazel Coleman**
**303 South Court Street**
**Opelousas, LA 70570**
**(337) 942-4355**
**Counsel for Appellant:**
        **J.F., Sr.**

**Lauren Mouret**
**DeJean, Mouret and Mouret**
**115 North Court Street**
**Opelousas, LA 70570**
**(3337) 948-8276**
**Counsel for Appellee:**
  **J.F.**
  **A.F.**
  **J.F., Jr.**

**Brandon Guillory**
**215 South Court Street**
**Opelousas, LA 70570**
**(337) 948-4500**
**Counsel for Appellee:**
  **P.N.**

**J.F., Sr.**
**In Proper Person**
**412 Sapphire St.**
**Opelousas, LA 70570**

GREMILLION, Judge.

The plaintiff, J.F., Sr., appeals in proper person, the findings of the trial court pertaining to the defendant's, the State of Louisiana through the Department of Social Services (DSS), custody of his three minor children.

**FACTUAL AND PROCEDURAL BACKGROUND**

J.F., Sr. and P.N. are the parents of three minor children, J.F., Jr., J.F., and A.F.[1] Their involvement with DSS is lengthy and dates back in this record to 2001, when the State filed a children in need of care petition urging that the children were in need of care.[2] J.F., Jr. had been cared for by his paternal grandmother who alleged that J.F., Sr. removed J.F., Jr. from her home. Following an investigation, the agency recommended that J.F., Jr. be placed in the care of J.F., Sr. with no further supervision by the agency. Pursuant to a judgment entered by the trial court, J.F., Jr. was placed in his father's custody.

In 2004, DSS again filed a child in need of care petition pertaining to J.F., Jr. DSS found that J.F., Sr. and P.N. left their children in the care of the paternal grandmother whose son, P.F., was residing in the home. P.F. had been convicted of indecent behavior with a juvenile. J.F., Sr. and P.N. were aware of this fact. DSS found that P.F. sexually abused J.F., Jr. by sodomizing him. They further found that J.F., Sr. was unable to provide for J.F., Jr.'s needs. The trial court's August 2004 judgment placed the children in the care of P.N.

---

[1]J.F., Jr. was born 3/09/94;  J.F. was born 1/28/01, and A.F. was born 11/25/02.

[2]P.N.'s older child was removed from her care in 1992, due to her ongoing substance abuse problem.

In February 2005, while in P.N.'s custody, an Instanter Order was issued placing temporary custody of all three of the children with the State due to medical neglect and lack of supervision. A petition to declare the children in need of care was filed due to neglect and the children were placed in foster care. The case plan for the children revealed that both P.N. and J.F., Sr. asked for custody of the children. The children were continued in state custody through August 2005, at which time a review hearing was set.

In April 2005, J.F., Sr. filed a motion to return the minor children to his care. J.F., Sr.'s mother filed an ex parte motion to take provisional custody of the children pending the continued custody hearing under La.Ch.Code art. 622 and 624. She urged that until custody could be determined, the children should be placed with her, a relative, pursuant to La.Ch.Code art. 627. DSS conducted a home study and found that J.F., Sr.'s mother would be a suitable placement for the children at the end of the school year. The trial court rendered a judgment in April 2005, continuing custody in the State. J.F., Sr. filed a motion for appeal to this court, which was apparently granted, but later rescinded.[3]

On May 25, 2005, J.F., Sr. filed an "Objection to O.C.S. Recommendation" urging that the children should be placed with him instead of his mother and, further, seeking full custody of them. The minutes from the May 25, 2005 hearing state that the trial court refused to sign the order and placed the children with J.F., Sr.'s mother. The review judgment dated the same day continued custody

---

[3]On June 27, 2005, J.F., Sr. filed a petition for writ of mandamus in relation to his April 2005 motion for appeal to this court urging that the City Court of Opelousas had not complied with the order to forward the appeal.

with DSS and approved the case plan.

On August 3, 2005, DSS submitted a report in preparation for an August 10, 2005 hearing. The children remained in the home of J.F., Sr.'s mother. The agency recommended that the children remain in her home while P.N. worked her case plan and to allow J.F., Sr. to have his appeal heard. Following the August 10, 2005 hearing, the trial court concurred with DSS's recommendations and placement continued in the grandmother's home. J.F., Sr. filed another Motion for Appeal to this court which was denied by the trial court.

On December 2, 2005, DSS submitted a report in preparation for a December 7, 2005 hearing. As in the previous report, DSS reported that J.F., Sr. refused to work his case plan while awaiting the ruling of this court. DSS recommended that the children remain in state custody for six months with placement continuing at the paternal grandmother's home. On the date of the hearing, J.F., Sr. filed a "Motion to Take Provisional Custody of the Children Because the Action of the Court is Illegal and Due Process is Violated in This Case." The review judgment following the December 7, 2005 hearing maintained the status quo as recommended by DSS. J.F., Sr. filed a motion for appeal from the December 7, 2005 judgment.

On January 11, 2006, J.F., Sr. filed a motion to dismiss, presumably the petition to declare the children in need of care, requesting that they be placed in his custody. On January 18, 2006, the trial court dismissed the motion with prejudice.

On January 19, 2006, DSS forwarded a report to the trial court recommending that legal custody of the children be awarded to the paternal grandmother. On January 25, 2006, J.F., Sr. filed a motion for supervisory writs from

3

the January 18, 2006 judgment wherein his motion to dismiss was denied and dismissed. In March 2006, this court sent J.F., Sr. a letter alerting him that his filings with us were procedurally incorrect. Thereafter, in May 2006, we denied the writ as being untimely. In June 2006, J.F., Sr. then filed a "Motion for Reinstated" (sic) urging that his writ was not untimely. Later that same month, we granted the motion to reinstate the supervisory writ application, but denied the writ because the judgment sought to be reviewed was a final appealable judgment, therefore, J.F., Sr. had an adequate remedy through appeal. Although the time for appeal had expired, we treated the writ application as a timely appeal.[4]

Following a review hearing on March 8, 2006, the trial court denied J.F., Sr.'s motion to dismiss the child abuse and neglect case. The trial court concurred with DSS that custody be given to the paternal grandmother and further terminated state supervision. Guardianship of the children was granted to the paternal grandmother to remain in effect until each child reaches the ages of eighteen. On April 7, 2006, J.F., Sr. and P.N. filed a motion for supervisory writ to this court pertaining to the March 8, 2006 judgment.

On May 23, 2007, we rendered an unpublished opinion vacating the judgment awarding guardianship of the children to the paternal grandmother and remanded the case to the trial court for further proceedings.[5] We found that the trial court's failure to determine if J.F., Sr.'s waiver of his right to appointed counsel was knowing and intelligent required vacation of the March 8, 2006 review judgment.

---

[4]On June 30, 2006, J.F., Sr. filed a petition for writ of certiorari and review to the Louisiana Supreme Court. Thereafter, the record ends.

[5]*State in the Interest of J.F., J.F. and A.F.*, 06-1484 (La.App. 3 Cir. 5/23/2007) (an unpublished opinion).

4

Thereafter, on May 30, 2006, the trial court, in an ex parte order, returned the custody of the children to the state and vacated its March 8, 2006 judgment. On June 17, 2007, J.F., Sr. filed an application for supervisory writ to this court pertaining to the trial court's May 30, 2006 ex parte order.

The minutes of a July 18, 2007 hearing indicate that the trial court reset the hearing pending our finding in J.F., Sr.'s most current writ. J.F., Sr. objected to the hearing being reset. On August 3, 2007, we rendered an opinion pertaining to J.F., Sr.'s June 17, 2007 writ. That writ was granted in part and made peremptory and denied in part. We found:

> We find no abuse of discretion in the trial court's ruling of temporary placement of these children with the State of Louisiana, Department of Social Services. We grant this writ solely for purposes of ordering that the Review and/or Permanency hearing be held no later than September 4, 2007. In all other respects, we deny the writ application.

Following a review hearing on August 15, 2007, the trial court concurred with the State's opinion that the children should remain with their paternal grandmother. J.F., Sr. then filed a "Petition for Returned Date," in which he appealed the August 15, 2007 review judgment. He also filed a motion for appeal on August 20, 2007.

## ISSUES

J.F., Sr. first requests that we review the record for errors patent in the interest of justice. He then assigns as error:

1. The trial court's allowing DSS to initiate removal proceedings when certain formalities were not met.

2. "Whether the trial court has erred at the review hearing when the court considered the best interest of the children, and failure to consider the factors in La.Civ.Code art. 131

5

and La.Civ.Code art. 134 and deprive the appellant of due process."

3.    The trial court's allowing unsworn testimony by a DSS caseworker which is a violation of La.Ch.Code art. 603 and a denial of his due process rights to confront and cross-examine the witness.

4.    The trial court's failure to comply with La.Ch.Code art. 101.

5.    The trial court denied the parents and children their due process rights by failing to comply with La.Ch.Code art. 625 at an August 15, 2007 review hearing.

## ERRORS PATENT

J.F., Sr. urges that we review these proceedings for "errors patent." The Louisiana Children's Code does not provide for an errors patent review of the record. An errors patent review is only available in criminal appeals pursuant to La. Code Crim.P. art. 920.

## VALIDITY OF REMOVAL PROCEEDINGS

*Authority of DSS*

It appears that J.F., Sr. is arguing that the original removal proceedings instituted in 2005, were faulty because (1) a caseworker filed a written affidavit into the court without the approval of the district attorney under La.Ch.Code art. 615(B) 1-4 and La.Ch.Code art. 631 and (2) a February 28, 2005 hearing was not recorded in violation of La.Ch.Code art. 410.

Louisiana Children's Code Article 615 is found in Chapter Five of the Louisiana Children's Code. That chapter pertains to child abuse reporting and investigation. Article 615 pertains to the agency's responsibilities pertaining to the disposition of reports following a report of child abuse. Article 615(B)1-4 (emphasis

6

added) states:

> After investigation, *the local child protection unit shall make one of the following determinations*:

> (1) The child appears to be a child in need of care and his immediate removal is necessary for his protection from further abuse or neglect, in which case, whenever such extraordinary justification arises, it shall apply for an instanter removal order to place the child in the custody of a suitable relative or other suitable individual capable of protecting the health and safety of the child or the state authorized under Articles 619 and 620 and shall notify the district attorney as soon as possible.

> (2) The report appears to be justified, in that there is evidence of child abuse, or neglect, and a protective order would eliminate the need for removal of the child in order to protect him from further abuse, in which case it may apply for a temporary restraining order or protective order authorized by Article 617 and Article 618.

> (3) The report appears to be justified, in that there is evidence of child abuse or neglect, in which case it shall report all pertinent information to the district attorney, as soon as possible but in no case more than thirty days after such determination, for evaluation of whether a child in need of care petition should be filed in the court with juvenile jurisdiction.

> (4) The report is inconclusive, in that the evidence tends to support a finding of abuse or neglect, but there is not enough information to confirm a justified report.

Louisiana Children's Code Article 619 (emphasis added) pertains to instanter orders

of custody, and states in part:

> A. (1) A peace officer, district attorney, or *employee of the local child protection unit of the department may file a verified complaint* alleging facts showing that there are reasonable grounds to believe that the child is in need of care and that emergency removal is necessary to secure the child's protection.

> . . . .

> B. The court shall immediately determine whether reasonable efforts have been made by the department to prevent or eliminate the need for the child's removal, including whether the department has

requested a temporary restraining order pursuant to Article 617 or a protective order pursuant to Article 618. In making and determining reasonable efforts, the child's health and safety shall be the paramount concern. However, the court may authorize the removal of the child even if the department's efforts have not been reasonable.

. . . .

C. (2) If the court determines that the child's welfare cannot be safeguarded without removal, the court shall immediately issue a written instanter order directing that the child be placed in the provisional custody of a suitable relative or other suitable individual capable of protecting the health and safety of the child taken into the custody of the state. The order shall contain written findings of fact supporting the necessity for the child's removal in order to safeguard his welfare. If the court determines that emergency removal is not necessary to secure the child's protection, the court shall issue a written order denying the request for custody. If custody is given to a suitable relative or other suitable individual, the safety plan shall be made an order of the court and shall direct the provisional custodian to adhere to the condition of the safety plan. The safety plan shall set forth condition sof contact with the parents or other third parties.

. . . .

D. *An instanter order shall be executed by either an employee of the local child protection unit* or any peace officer having territorial jurisdiction over the child.

Louisiana Children's Code Article 631(A) (emphasis added) states:

A child in need of care proceeding shall be commenced by petition filed by the district attorney. *Any other person authorized by the court* may file a petition if there are reasonable grounds to believe that the child is a child in need of care.

J.F., Sr. urges that the Office of Community Support worker "did not have exclusive jurisdiction to initiate the removal of custody proceeding by the filing of an affidavit, and without the approval of the District Attorney." He argues that only the district attorney could initiate the proceedings. We disagree. The Louisiana Children's Code clearly provides that an employee of the local child protection unit

can file a complaint for removal of a child via an instanter order and commence a child in need of care proceeding by filing a petition. Accordingly, this assignment of error is without merit.

*Recordation at the Hearing*

In the second portion of his first assignment of error, J.F., Sr. urges that at a hearing on February 28, 2005, there was no court reporter present in violation of La.Ch.Code art. 410, which states that "[j]uvenile proceedings, except in cases of traffic violations pursuant to Title IX, shall be recorded." The minutes of the February 28, 2005 instanter hearing indicate that J.F., Sr.'s counsel was present at the hearing. However, there is nothing in the record to indicate that this hearing was recorded. We agree that the failure to record this hearing was in error as it contravenes the demands of Article 410. In *State in the Interest of T.T.*, 96-06 (La.App. 3 Cir. 5/8/96), 677 So.2d 466, we vacated and remanded so that a new disposition hearing could be held because there was no record of the juvenile's disposition. In *T.T.*, the juvenile was declared a delinquent and placed with the Department of Youth Services and Corrections until his twenty-first birthday for simple burglary of an inhabited dwelling. There are no other cases addressing the Article 410 recordation requirement. In the case at hand and considering its lengthy history, we find it would be highly inappropriate and not at all in the children's best interests to vacate an instanter order issued over three years ago. While we do find it was erroneous not to record the hearing, we find it was harmless error in this case. Accordingly, this assignment of error is without merit.

## APPLICABILITY OF LA.CIV. CODE ARTS. 131 AND 134

In this assignment of error, J.F., Sr. urges that the trial court erred in failing to consider the factors found in La.Civ.Code arts. 131 and 134 when determining the best interests of the children at the August 15, 2007 review hearing. Articles 131 and 134 are found in Title V of the civil code under the heading of "DIVORCE."

Louisiana Civil Code Article 131 states, "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." Article 134 requires the court to consider all relevant factors when determining the child's best interests and lists twelve factors that may be included in such a determination. While the Louisiana Children's Code provides that the best interests of the children are of paramount concern, it does not require that the trial court use the factors listed in Article 134. Accordingly, this assignment of error is without merit.

Additionally, in this subsection, J.F., Sr. seems to argue his case on the merits and refers this court to his numerous "exhibits" as proof of his stable and loving home. J.F., Sr. essentially urges that custody should be awarded to him. In our August 3, 2007 opinion, we ruled that the trial court did not abuse its discretion in placing the children in the State's custody. Having reviewed the lengthy record, we again find that the trial court has not erred in placing the children in the paternal grandmother's home. A review of the hearing records and reports filed by DSS make it clear that J.F., Sr. refused to work the case plan and cooperate with DSS because he is awaiting the outcome of his appeal to this court. That is simply an insufficient

10

reason to refuse to cooperate with DSS. Moreover, J.F., Sr., although appointed an attorney by the trial court, continues to represent himself arguing with the trial court that this court held that his due process rights were violated when the children were originally taken. We are making it very clear for J.F., Sr.'s benefit, that this court has not rendered any such ruling. Although it appears that J.F., Sr. has a genuine interest in reuniting with his children, we find no error in the trial court's current placement. At the most recent hearing, J.F., Sr. had no running water in his home, no proof of income, and had drug charges pending against him. We urge J.F., Sr. to work the case plan if he wants to regain custody of his children. This assignment of error is without merit.

## WITNESS TESTIMONY

In this assignment of error, J.F., Sr. urges that the trial court erred in allowing unsworn testimony of a caseworker in violation of La.Code Evid. art. 603 and further denied him due process by not allowing him to confront and cross-examine the witnesses. Article 603 requires that "[b]efore testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation." A review of the August 15, 2007 hearing transcript indicates that each and every witness was sworn before testifying. A notation is indicated before the start of each witness's testimony, which states: " [The witness's name] called as a witness, after first being duly sworn, took the witness stand and testified as follows[.]" Prior to this particular witness the notation is in the record, but is missing the word "sworn." We find this to be a typographical error rather than an indication that the witness was not sworn. We further note no contemporaneous objection by J.F., Sr. *See LaHaye v. Allstate*

11

*Ins. Co.,* 570 So.2d 460 (La.App. 3 Cir. 1990), *writ denied*, 575 So.2d 391 (La.1991). Additionally, J.F., Sr. cites no place in the record indicating that he was denied the right to confront and cross-examine witnesses. Accordingly, this assignment of error is without merit.

## ABANDONED ISSUES

In his fourth assignment of error, J.F., Sr. recites La.Ch.Code art. 101, but provides no argument as to how the trial court failed to comply with its provisions. Similarly, pertaining to his fifth assignment of error, he recites La.Ch.Code art. 625, but provides no argument as to how the trial court failed to comply with these provisions. The Uniform Rules—Courts of Appeal, Rule 2-12.4 states in part: "All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." Accordingly, we consider these assignments of error abandoned.

## CONCLUSION

The judgment of the trial court is affirmed. All costs of this appeal are assessed against J.F., Sr.

**AFFIRMED**.

This opinion is NOT DESIGNATED FOR PUBLICATION, Uniform Rules—Courts of Appeal, Rule 2-16.3.

12