NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-0822

REED, INC.

VERSUS

C & E SUPPLY CO., INC.

************

APPEAL FROM THE
EUNICE CITY COURT
PARISH OF ST. LANDRY, NO. 25,818
HONORABLE LYNETTE YOUNG FEUCHT
CITY COURT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, James T. Genovese, and David E. Chatelain,[*] Judges.

AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.

H. Kent Aguillard
Attorney at Law
P. O. Drawer 391
Eunice, LA 70535-0391
(337) 457-9331
COUNSEL FOR PLAINTIFF/APPELLEE:
    Reed, Inc.

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Norris J. Greenhouse**
**P. O. Box 444**
**Marksville, LA 71351**
**(318) 253-6394**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**C & E Supply Company, Inc.**

PETERS, J.

In this open account collection suit, the defendant, C & E Supply Company, Inc. (C & E), appeals the trial court's judgment awarding $6,349.50 on an open account debt and $1,500.00 in attorney fees to the plaintiff, Reed, Inc. (Reed). For the following reasons, we affirm the judgment in part, amend in part, and render judgment.

## DISCUSSION OF THE RECORD

At issue in this matter is C & E's nonpayment for 1,494 gallons of diesel fuel which Reed asserts it delivered on the afternoon of August 4, 2008, to C & E's Eunice, Louisiana facility at C & E's request. It is not disputed that C & E uses diesel fuel in its business operation, that it does not stockpile the fuel, and that Reed is one of four companies with whom C & E has contracted in the past to satisfy its fuel needs. When the need for fuel arises, one of three C & E employees solicits prices from the four suppliers and generally orders the needed fuel from the supplier providing the lowest price. It is also undisputed that Mary Dupre, C & E's secretary/bookkeeper, is one of the three C & E employees authorized to order fuel on behalf of the corporation.

Reed asserts that Ms. Dupre contacted its business office on August 4, 2008, and placed an order for the delivery of 1,500 gallons of low sulphur diesel fuel. In response to that order, Kerry Leger, a Reed employee, delivered the fuel to C & E's facility on that same afternoon. When C & E failed to timely pay the cost of the fuel, a representative of Reed contacted C & E's officials, who denied receiving the fuel.

After further efforts to collect the indebtedness failed, Reed's counsel mailed a letter to C & E making demand for the payment of the $6,349.50 due. When no payment was forthcoming after the demand letter was received, Reed brought the

collection suit now before us. Following a trial on the merits, the trial court rendered judgment against C & E and in favor of Reed, awarding Reed $6,349.50 for the payment of the delivered fuel and $1,500.00 in attorney fees.

In its appeal of that judgment, C & E raises four assignments of error:

I.      The trial court committed manifest error overruling [C & E's] objection to [Reed's] introduction of Exhibit P 1, in globo [ ] consisting of a letter written by attorney of record Mr. Kent Aguillard to [C & E] dated March 26, 2009 with a copy of an executed domestic receipt and copy of U.S. Postal Service Certified Mail receipt having different article numbers and stamped received December 8, 2009; and a copy of [Reed's] fuel delivery ticket number, 05035 as evidence of [Reed's] compliance with the provisions of **LSA-R.S. 9:2781**.

II.     The trial court committed manifest error awarding [Reed] attorney fees when [Reed] presented no proof that it forwarded a copy of its actual fuel delivery ticket number 05035 in compliance with the provisions of **LSA-R.S. 9:2781**.

III.    The trial court committed manifest error overruling [C & E's] objections requesting the evidence to be submitted pursuant to the best evidence rule and allowing [Reed] to introduce as exhibits into evidence copies of its fuel delivery tickets, a copy of computer generated account history in lieu of alleged billing statements to be mailed to [C & E].

IV.     The trial court committed manifest order in its finding that [Reed] presented undisputed proof that [C & E] needed fuel on August 4, 2009 [sic] and [Reed] proved that it delivered the fuel, shifting the burden of proof to [C & E] to establish that the fuel was not delivered by [Reed] and that it purchased the needed diesel fuel from another vendor.

Reed has filed an answer to appeal, seeking an increase in the award of attorney fees at the trial court level, an award of legal interest on the attorney fee award, and an award of attorney fees for work performed on appeal.

**OPINION**

The law pertaining to a suit on open account is found in La.R.S. 9:2781. That statute provides in part:

A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting

2

forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

B. If the demand is forwarded to the person by first class mail to his last known address, a copy of the demand shall be introduced as evidence of written demand on the debtor.

C. If the demand is made by citation and service of a petition, the person shall be entitled to pay the account without attorney fees by delivering payment to the claimant or the claimant's attorney within ten days after service of the petition in city courts and fifteen days after service of the petition in all other courts.

La.R.S. 9:2782(A-C).

### *First and Second Assignments of Error*

C & E's first two assignments of error question Reed's compliance with the requirements of La.R.S. 9:2781 in order to qualify for an award of attorney fees. In its first assignment of error, C & E argues that the trial court erred by allowing Reed to introduce a copy of its demand letter dated March 26, 2009, and a copy of the delivery ticket at issue. In its second assignment of error, C & E argues that the trial court erred in awarding attorney fees to Reed when it failed to prove that it presented C & E with a copy of the actual delivery ticket as required by La.R.S. 9:2781.

In reviewing these assignments of error, we first note that the legislature has amended La.R.S. 9:2781 a number of times, with the last such amendment occurring in 2001. The requirements under the statute have varied over the years, but the statute in effect at the time the dispute now before us arose is markedly in favor of the creditor—it requires nothing more than a written demand "correctly setting forth the

3

amount owed." The demand letter at issue does just that: it informs C & E of the amount of the indebtedness claimed ($6,349.50). While questions exist concerning when C & E received the demand letter,[1] Guy Ceasar, C & E's general manager, admitted that he received it. We find no error in the trial court's decision to accept into evidence a copy of the demand letter.

As for the trial court's decision allowing the copy of the fuel delivery ticket to be introduced into evidence in lieu of the original, we find no error in that decision either. Not only does La.R.S. 9:2871 not require the attachment of the original fuel delivery ticket, but Ms. Dupre acknowledged in her testimony that she received a copy of the disputed ticket.

### Third Assignment of Error

In its third assignment of error, C & E argues that the trial court erred in allowing Reed to introduce copies of two delivery tickets and a computer generated account history in lieu of the actual billing statements. While C & E did object to Reed's introduction of the two delivery tickets, it failed to object to the introduction of the account history.[2] We will apply the general rule that an evidentiary issue will not be reviewed on appeal unless a contemporaneous objection is made to its introduction. *Young v. Joy*, 09-756 (La.App. 3 Cir. 2/3/10), 30 So.3d 1116; *LaHaye v. Allstate Ins. Co.*, 570 So.2d 460 (La.App. 3 Cir. 1990), *writ denied*, 575 So.2d 391 (La.1991). Therefore, we will only address C & E's objection to the introduction of the copies of the two delivery tickets.

---

[1]Although the demand letter is dated March 26, 2008, this is obviously an administrative error on the part of Reed's counsel, as the letter correctly reflects the amount owed for the fuel delivery of August 4, 2008. The certified mail receipt reflects delivery of the demand letter to C & E on December 15, 2008.

[2]C & E's counsel cross-examined Reed's chief financial officer about the use of the account history, but failed to object to its introduction.

Louisiana Code of Evidence Article 1003 provides that a copy of an original may be introduced in lieu of an original except in the three instances:

(1)     A genuine question is raised as to the authenticity of the original;

(2)     In the circumstances it would be unfair to admit the duplicate in lieu of the original; or

(3)     The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.

The two delivery tickets at issue relate to evidence of fuel delivered by Reed to C & E before and after the fuel delivery at issue in this litigation.  Landy Fontenot, Reed's chief financial officer, used the copies of these delivery tickets to establish the date of the delivery.[3]  When questioned concerning the copies themselves, Mr. Fontenot testified that when a delivery is made, Reed's drivers turn in two parts of a three-part delivery ticket to the manager.[4]  The manager then gives the two tickets to the clerical staff for posting in the computer system and filing away.  According to Mr. Fontenot, the tickets are kept for a month in the office and then stored in a warehouse.  In this case, he had the original tickets pulled from the warehouse records, copied, and returned to storage.  He asserted that the copies used at trial were accurate copies of the originals.

C & E does not question the authenticity of the original, deny the accuracy of the copies, or assert that somehow it would be unfair to allow the copies to be admitted.  It simply argues that copies should not have been allowed when the

---

[3]By reading the meter numbers on these two tickets and the actual date of the fuel delivery these tickets represented, Mr. Fontenot was able to establish the actual delivery date of the fuel in question.

[4]The third part is left with the customer.

originals were available. Based on La.Code Evid. art. 1003, we find no error in the trial court's decision to admit the copies into evidence.

### Fourth Assignment of Error

In this assignment of error, C & E argues that the trial court erred in finding that Reed satisfactorily proved that C & E needed fuel on August 4, 2008, or that Reed delivered the fuel. That being the case, C & E argues, the burden should not have shifted so as to require it to establish that it received no fuel from Reed on that day.

In a suit on open account, the creditor bears the burden of proving the existence of both the debtor's account and the debt owed through the introduction of its business records and evidence bearing out the accuracy of those records. *Metal Coatings, L.L.C. v. Petroquip Energy Services, L.P.*, 06-1118 (La.App. 3 Cir. 11/21/07), 970 So.2d 695. Proof of the account and debt establishes a prima facie case in favor of the creditor, which causes a shift in burden to the debtor to prove either an inaccuracy in the evidence or its entitlement to certain credits. *Id.*

In its written reasons for judgment, the trial court stated the following:

> The Court has mulled its decision in this matter. The lengthy testimony offered established that both parties had a protocol for receipt and delivery of fuel. The credibility of both parties is undisputed. The Court must lean then on the reliability of the evidence taken as a whole. Certainly it is poor business practice to charge commodities on verbal communications only. However, this Court takes judicial notice that in a small community it is done all the time. Our strengths are our weaknesses. The testimony of witnesses for both parties hold inconsistencies ranging from who held keys to who noted deliveries made. The Court concludes that although both parties had established protocol neither followed it faithfully. C & E Supply Company, Inc. did not sign all deliveries. Reed, Inc. did not confirm all delivers the same way. Both were relaxed in there practices and therefore, the Court cannot conclude that either party performed a practice without failure including locking the tanks.

6

After sorting through all testimony the Court is left with two facts influencing its decision. It is undisputed that Mary Dupre called for fuel prices on August 4, 2009 [sic]. It is logged by Reed, Inc. and she testified that she probably did. She also testified that she only called when fuel was needed by C & E. Thus the Court must conclude that fuel was needed on August 4, 2009 [sic]. Mr. Landy Fontenot testified it was ordered. Kerry Leger testified it was delivered and defendant did not present any evidence of receipt of fuel from any other vendor on the date of August 4, 2009 [sic] through August 6, 2009 [sic], evidencing that the admitted need for fuel was fulfilled. Defendant had these records available and did not show proof of receipt from any fuel source. Plaintiff testified they delivered the fuel requested. The case at bar is a convergence of two well established businesses conducting business in a manner not ordinarily conducted. Plaintiff usually bills and invoices immediately. Defendant usually locks the tank and signs the ticket. The regular protocols were not followed. The evidence presented that C & E Supply Company, Inc. needed fuel on August 4, 2009 [sic] (Mary Dupre and Landy Fontenot testimony). Reed Gas delivered it (Kerry Leger testimony).

For the foregoing reasons the Court finds that the evidence supports that C & E Supply Company, Inc. had a need for fuel on August 4, 2009 [sic]. Plaintiff established they provided it. Defendant provided no evidence that fuel was supplied from any other vendors. For this reason the Court finds in favor of plaintiff and against defendant and awards the sum of $6,349.50, plus legal interest from date of Judicial Demand and awards attorney fees in the sum of $1500.00. Costs are assessed to defendant.

The trial court judgment was based on findings of fact, which are reviewed pursuant to the manifest error/clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Under that standard, an appellate court will not reverse a trial court finding unless, after reviewing the record in its entirety, it satisfies a two-part test: (1) it finds that a reasonable factual basis does not exist for the finding, and (2) it determines that the record establishes that the trial court finding is clearly wrong or manifestly erroneous. *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. This holds true even if the appellate

court would have ruled differently had it been sitting as the court of first instance. *Rosell*, 549 So.2d 840. "Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart*, 617 So.2d at 883 (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973)).

Bryan Bundick, Reed's vice-president and manager, testified that he personally took an order for 1,500 gallons of low-sulphur diesel fuel from Ms. Dupre on August 4, 2008. He then wrote the order down in Reed's call log, as per office procedure. According to Mr. Bundick, once a delivery is complete and the driver brings back the two copies of the delivery ticket, he then highlights the call log entry in yellow. He stated that he knew this particular delivery had been made because the entry was highlighted in yellow.

Kerry Leger was the Reed employee who had the responsibility of delivering the fuel to C & E. He testified that he made several deliveries to various customers on August 4, 2008, and specifically recalled the C & E delivery because it was the last of the day, and he had to work late in order to complete the delivery. Mr. Leger testified that he arrived at C & E's facility at approximately 5:00 p.m. and found C & E's bulk tank already unlocked. He immediately began transferring the fuel from his vehicle into the tank, a process which took approximately twenty minutes. He recalled that Robert Hebert, a C & E mechanic, and another unidentified man were present when he first arrived, but that Mr. Hebert left approximately ten minutes into the delivery process. When he finished transferring the fuel, the remaining unidentified man refused to sign the delivery ticket,[5] and the C & E office was already

---

[5]Mr. Bundick testified that it was not necessary for a driver to have the customer sign the delivery receipt unless the customer requested that Reed do so. In this case, according to Mr. Bundick, C & E had never made such a request although Mr. Leger testified that C & E was the only customer who regularly signed the delivery tickets.

closed. Therefore, he simply left C & E's copy of the delivery ticket on the bulk tank and locked it. Mr. Leger testified that he never rounds off the amount of fuel delivered, and this order was no exception. Using the metering system on his delivery truck, he noted on the invoice the exact amount of fuel delivered—1,494 gallons. Once the delivery was complete, Mr. Leger turned his delivery ticket over to Mr. Bundick for posting in the computer system. Then either he or Mr. Bundick highlighted the entry in the call log to provide a record of delivery.

Mr. Fontenot testified as to the accuracy of the amount in dispute as well as the company policy testified to by Mr. Bundick and Mr. Leger. He also testified that when he discovered that the invoice in question was in a delinquent status and that it involved a regular customer, he spoke to Ms. Dupre at the C & E office and faxed her a copy of the delivery ticket when she told him she did not have a copy. Thereafter, when communications seemed to break down with the C & E office, he pulled copies of various invoices in an effort to effect a surrounding history of the dispute. Being satisfied with his findings, he went to the C & E office, together with Mr. Bundick and Mr. Leger, and met with Ms. Dupre. In addition to his records, Mr. Fontenot obtained invoices from C & E of its purchases from other suppliers in the time surrounding August 4, 2008. Using these invoices, he was able to determine that C & E would have had room in its tank for 1,500 gallons of fuel on August 4. Despite all this information, C & E still refused to acknowledge receipt of the disputed fuel. According to Mr. Fontenot, Ms. Dupre informed him that the statement was not being paid because the delivery ticket had not been signed by a C & E representative.[6]

---

[6]Reed introduced another unsigned delivery ticket dated July 9, 2008. C & E paid that delivery charge on July 18, 2008, without protest.

9

Mr. Fontenot testified that as they left C & E's office after meeting with Ms. Dupre, Mr. Leger noticed Mr. Hebert in C & E's shop and questioned him about his memory of the delivery. According to Mr. Fontenot, Mr. Hebert told him that he recalled the fuel being delivered and did not understand why C & E was refusing to pay the invoice.

Mr. Hebert did recall being questioned by representatives of Reed, but denied having told them that he thought C & E should pay the invoice. He testified that he always had to unlock the tank, was always present from start to completion of a delivery, and always signed the ticket accepting delivery. Mr. Hebert also testified that he never spoke with representatives of Reed privately.

Ms. Dupre acknowledged calling Reed on August 4, 2008, soliciting prices for fuel. However, she could not testify that C & E purchased fuel from any other source on that day. She testified that her first knowledge of an outstanding balance claimed by Reed was when a Reed employee telephoned her to discuss the matter. When supplied with a delivery ticket, she noticed that it had not been signed by a C & E employee, so she questioned Mr. Ceasar about it. When he professed to have no knowledge of the delivery, she initially rejected the claim. Thereafter, and before the Reed representatives came to discuss the matter face-to-face, she became aware of Mr. Leger's assertion that two men were present on the afternoon of August 4. The description of the unidentified man fit that of Mr. Ceaser, but he claimed not to have been present.

Mr. Ceasar, Ms. Dupre, Mr. Hebert, and three other C & E employees—Thomas Ceasar, Warren Ceasar, Jr., and Wilbert Ned—all testified as to the procedure followed when fuel is delivered to the bulk tank. All, except Guy

10

Ceasar, testified that there is only one key to the bulk tank, that it is kept in the office, and that the tank is never unlocked in advance of delivery.[7]  Additionally, the procedure requires an employee to measure the fuel in the delivery truck before the transfer process begins and, once the transfer is complete, to recheck the amount of fuel to determine the quantity of fuel offloaded.  All the witnesses suggested that deliveries are not begun after 5:00 p.m. and, for those begun close to that time, a C & E employee stays around and signs the delivery ticket.

After reviewing the testimony and evidence cited herein as well as the rest of the record, we agree with the trial court that the two companies may have deviated from their standard operating procedures.  We also find that there is a reasonable factual basis for the trial court's determination that the fuel was ordered and delivered as testified to by Reed's witnesses, and we do not find that the trial court's findings of fact are clearly wrong or manifestly erroneous.  Therefore, we find no merit in this assignment of error.

## ANSWER TO APPEAL

In Reed's answer to appeal, it argues that the trial court's award of attorney fees should be increased, that the attorney fee award should include legal interest, and that additional attorney fees should be awarded for work performed on appeal. Based on our review of the record, we affirm the attorney fees awarded by the trial court, we amend the trial court's award to include legal interest, and we render judgment awarding Reed an additional $1,000.00 in attorney fees for work performed on appeal.

---

[7]Guy Ceasar testified that he has a copy of the key of every truck and piece of equipment owned by C & E, including the tank at issue.

# DISPOSITION

For the foregoing reasons, we affirm in part the trial court judgment in favor of Reed, Inc., and against C & E Supply Company, Inc.; we amend in part the trial court judgment to award Reed, Inc. legal interest on the attorney fee award; and we render judgment awarding Reed, Inc. an additional $1,000.00 in attorney fees for work performed on appeal. We assess all costs of this appeal to C & E Supply Company, Inc.

**AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.**

**This opinion is NOT DESIGNATED FOR PUBLICATION.**
**Uniform Rules—Courts of Appeal, Rule 2–16.3.**

12